PRATT, f.k.a. McCullough, Appellee,

v.

McCULLOUGH, Appellant.

[Cite as *Pratt v. McCullough* (1995), 100 Ohio App.3d 479.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA 94–04–044.

Decided Jan. 30, 1995.

*Pratt & Buchert* and *Gregory K. Pratt,* for appellee.

*Lierman & Leshner* and *Gerald R. Leshner,* for appellant.

WALSH, Presiding Judge.

Defendant-appellant, Roy McCullough, appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, increasing the amount of his child support obligation and ordering him to maintain a trust fund for his minor child's future college education.

Appellant and plaintiff-appellee, Victoria McCullough, were divorced on July 20, 1983. Custody of the parties' minor child, Tabitha McCullough, was awarded to appellee, and appellant was ordered to pay child support in the amount of $20 per week. Appellant's child support obligation was subsequently increased to $30 per week and then to $63 per week. As of the beginning of 1993, appellant earned approximately $32,000 per year. Appellee's current income is approximately $20,000 per year.

On February 3, 1993, appellant won $16 million in the Ohio Lottery, payable in twenty-six annual installments of $615,384.61. The parties stipulated that only half of this income, $307,692.30, should actually be attributed to appellant since he and his current wife redeemed the winning lottery ticket as joint owners.

Appellee filed a motion for an increase in child support on March 24, 1993, alleging that appellant's increased income from his lottery winnings constituted a material change in circumstances. After hearings on November 16, 1993 and December 21, 1993, the trial court granted appellee's motion in a judgment entry dated March 24, 1994. In its judgment entry, the trial court increased appellant's child support obligation to $31,215.38 per year, payable in installments of $1,767.95 per month.[1] In addition, the trial court required appellant to maintain a trust fund for Tabitha's college education into which he was required to deposit $10,000 of his total annual child support obligation.

■ On appeal, appellant presents two assignments of error for review.[2] In his first assignment of error, appellant argues that the trial court abused its discretion in determining the amount of increase in his annual child support obligation. We disagree.

Appellant does not dispute the trial court's determination that his enormous increase in income due to his lottery winnings constitutes a change of circumstances substantial enough to require a modification of the amount of the existing child support order. See R.C. 3113.215(B)(4). According to R.C. 3113.215(B)(2)(b), if the combined gross income of both parents exceeds $150,000 per year, the court shall: (1) determine the amount of the obligor's child support obligation on a case-by-case basis; (2) consider the needs and standard of living of the children and the parents; (3) compute a basic combined child support obligation that is no less than the same percentage of the parents' combined annual income as is shown for $150,000; and (4) order that amount as child support unless the court determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee.

The trial court in this case followed the mandates of the statute. Pursuant to the third mandate, the trial court used the statutory child support schedule to determine the percentage of income paid for child support for a family earning $150,000 (10.145 percent) and applied that same percentage to the income earned by appellant. The annual child support obligation the trial court ordered

---

1. The trial court ordered this increase effective as of October 12, 1993, the date upon which a change in the statutory guidelines for calculating the amount of child support became effective.

2. Although appellant's "second assignment of error" is actually framed as a second subissue under his first assignment of error, since it addresses an essentially separate issue, we will consider it as a separate assignment of error.

appellant to pay, $31,215.38, constitutes 10.145 percent of appellant's annual income of $307,692.30.

According to the fourth mandate, the trial court is required to order this statutory amount as child support, unless it would be unjust or inappropriate and not in the best interest of the child, obligor, or obligee. Appellant contends that the trial court blindly followed the statutory guidelines; however, the trial court's judgment entry indicates that the court considered all the relevant statutory factors and circumstances of this particular case and concluded: "The Court can find no reason to deviate from the [statutory] schedule that would be in the child's best interest." The evidence and arguments offered by appellant fail to show that following the statutory guidelines would be unjust or inappropriate or not in the best interest of the child.

With regard to the reference in the fourth mandate concerning the best interest of the obligor or obligee, certainly it can be argued that it is in the best interest of every obligor to pay less child support, and it is in the best interest of every obligee to have the maximum available support paid to the child. However, in this case, appellant will still be financially very well-off even after paying the increased child support.

■ Appellant argues, in reference to the first and second mandates, that the trial court erred in awarding more child support than was actually necessary to support the child. However, an increased economic need is not a requirement for obtaining an increase in child support as long as it is shown that an increase in the obligor's income would result in at least a ten percent change in the amount of child support. See *Sobb v. Maxon* (Oct. 16, 1992), Lucas App. No. L–91–395, unreported, 1992 WL 289699. With the increase in child support, appellee testified that she would be able to ensure that Tabitha gets a quality education, is able to participate in more sports activities, and is able to take piano lessons, among other things.

Under the circumstances, we cannot conclude that the trial court's award of child support was so "unreasonable, arbitrary, or unconscionable" as to connote an abuse of discretion. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 481–482, 450 N.E.2d 1140, 1141. Accordingly, appellant's first assignment of error is overruled.

■ In his second assignment of error, appellant argues that the trial court was without jurisdiction to order him to maintain a trust fund for Tabitha's

college education and to make annual contributions of $10,000 to the fund, absent a provision to do so in the separation agreement. We agree.

This court has previously ruled that a domestic relations court does not have the authority to order an obligor to set money aside for a child's college education unless the parties have specifically agreed to such an arrangement in the separation agreement. See *Nin v. Nin* (Jan. 31, 1994), Butler App. No. CA93–01–018, unreported, 1994 WL 29880. In this case, there was no separation agreement or any other enforceable agreement by which appellant had agreed to fund a trust for Tabitha's college education; therefore, the trial court was without legal authority to order it.

The fact that appellant himself had voluntarily established a trust fund for his daughter prior to the court order is immaterial. Appellant may continue to deposit money into this trust if he so chooses; however, the trial court cannot order him to deposit a portion of his child support obligation into this trust. See *id.* Appellant's second assignment of error is accordingly sustained.

We note for purposes of clarification, by sustaining appellant's second assignment of error, we do not mean in any way to imply that the trial court's determination of appellant's child support obligation at $31,215.38 per year should be reduced. As discussed in connection with appellant's first assignment of error, the child support award of $31,215.38 per year was in accordance with the statutory guidelines and was within the discretion of the trial court. We are merely holding that the trial court cannot order appellant to deposit $10,000 out of his total annual support obligation into a college fund for his minor child's future education.

However, since the trial court deducted the $10,000 trust fund requirement from appellant's annual support obligation of $31,215.38 before calculating the amount of appellant's monthly support payments, these payments will have to be readjusted to account for the addition of the $10,000 yearly trust fund deposits which the trial court was without authority to order. Therefore, this case is hereby remanded to the trial court so that the amount of appellant's monthly child support payments may be recalculated.

The judgment is affirmed in part and reversed in part, and the cause is remanded.

*Judgment accordingly.*

KOEHLER and YOUNG, JJ., concur.