**FRAZIER et al., Appellees,**

v.

**DANIELS, Appellant.**

[Cite as *Frazier v. Daniels* (1997), 118 Ohio App.3d 425.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960105.

Decided Feb. 26, 1997.

*Doris Houser Allen,* for appellees.

*Gary F. Franke,* for appellant.

MARIANNA BROWN BETTMAN, Presiding Judge.

This appeal challenges two aspects of a child-support order entered by the juvenile court.[1]

This matter began with the filing of a paternity action by plaintiffs-appellees Gail Frazier (mother) and Ryan C. Frazier (son) against defendant-appellant Kalvoski Daniels seeking an adjudication that Daniels is the father of Ryan Frazier, who was born September 12, 1991. Daniels acknowledged paternity of Ryan. This acknowledgement was subsequently judicially adopted and made an order of the court.

Following a motion for custody and temporary support filed by Frazier,[2] the parties entered into an agreement (hereinafter "the Temporary Agreement") whereby Daniels would pay Frazier $3,000 per month, beginning December 1, 1992, for Ryan's support. The Temporary Agreement specifically reserved for later decision both the issues of retroactive child support (i.e., the support owed from Ryan's date of birth through the date of the Temporary Agreement) and the amount of permanent child support. The Temporary Agreement also stated that the agreed support amount was not intended to be an acknowledgement of the amount owed for permanent support under the support guidelines. The Temporary Agreement was approved by the court on February 9, 1993.

The parties apparently continued the Temporary Agreement without any attempt to set permanent support until May 3, 1994, when Daniels filed a motion to reduce his $3,000 monthly payments because he was injured and no longer playing major league baseball. A period of discovery ensued.

On March 24, 1995, the court ordered a trial before a magistrate on the issues expressly reserved in the Temporary Agreement, namely back support, birth expenses, and permanent support.[3]

On September 27, 1995, the magistrate issued a decision requiring Daniels to pay to Frazier $13,750 in retroactive support for a period of fifteen months, from Ryan's date of birth (September 1991) until the agreed entry of temporary support (December 1992). This $13,750 figure was calculated by multiplying

---

1. We have *sua sponte* removed this case from the accelerated calendar.

2. By agreement of the parties, Ryan lives with his mother. There are no custody issues raised in this appeal.

3. The magistrate did not decide the issue of permanent support because he felt Daniels had not provided sufficient information for him to do so. Thus, the issue of permanent support is not presently before this court.

$1,250 per month[4] times fifteen months, and then subtracting the $5,000 the parties agreed Daniels had already paid directly to Frazier. The magistrate also determined that Frazier had presented no evidence of birth expenses, and no reimbursement for these expenses was ordered. Finally, the magistrate recommended that Daniels fund a trust account in Ryan's name in the amount of $100,000. This fund would have Frazier as trustee and allow her to use the funds for Ryan's benefit, but only if his needs could not be met by current support. The magistrate determined that upon emancipation Ryan would be entitled to keep any remaining funds in the account. Both sides filed objections to the magistrate's decision. The trial court affirmed the magistrate's decision, and Daniels appealed.

Daniels lists three "arguments," which we will consider to be assignments of error. The first two challenge the retroactive child support; the last the "future needs" trust.

The essence of Daniels's arguments about retroactive support is that Frazier has received so much money for Ryan since the date of the agreed entry of temporary support that she could not possibly need any money to meet Ryan's needs during the fifteen-month period which preceded the Temporary Agreement. Daniels argues that Frazier has received over $130,000[5] in child support, and thus an award of retroactive child support, under these circumstances, would be inequitable, unjust, and inappropriate.

■ The trial court clearly has the discretion to award support from the date of a child's birth. R.C. 3111.13(C); R.C. 3111.13(F)(3); R.C. 3111.15. This court has already so found. *Baugh v. Carver* (1981), 3 Ohio App.3d 139, 140–141, 3 OBR 157, 157–160, 444 N.E.2d 58, 60–61 (interpreting former R.C. 3111.17, the predecessor statute to R.C. 3111.15). See, also, the excellent analysis of this point and cases cited in *Seegert v. Zietlow* (1994), 95 Ohio App.3d 451, 458–461, 642 N.E.2d 697, 702–704.

■ The guidelines for the amount of child support are mandatory. *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496. However, when the annual combined gross income of both parents exceeds $150,000 per year, the court has

---

4. The Basic Child Support Schedule's highest available figures are for an annual combined gross income of $150,000. R.C. 3113.215. At that income, for one child, the schedule requires support of $15,218 per year or approximately $1,250 per month. *Id.* This amount will be discussed in further detail below.

5. Although it is not clear, it appears that Daniels calculates this $130,000 amount from his monthly payments of $3,000 multiplied by the forty-four months from January 1993 until the filing of his brief in August 1996.

some discretion in setting the amount of child support. Daniels earned well over $2 million per year for the years 1991 and 1992.

▮▮ Pursuant to R.C. 3113.215(B)(2)(b), in setting support for annual combined income over $150,000, the court shall (1) determine the amount of the obligor's child-support obligation on a case-by-case basis, (2) consider the needs and standard of living of the child and the parents, (3) compute a basic combined child-support obligation that is no less than the same percentage of the parents' combined annual income as is shown for $150,000, and (4) order that amount as child support unless the court determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee. See *Pratt v. McCullough* (1995), 100 Ohio App.3d 479, 481, 654 N.E.2d 372, 373. R.C. 3113.215(B)(2)(b) clearly applies to the fifteen-month period of retroactive support in this case.

As mentioned in footnote 4, for one child, the guidelines require $15,218 per year, or approximately $1,250 per month for an annual combined gross income of $150,000. This $1,250 per month is about ten percent of $150,000.

▮ Given the finding by the magistrate that, pursuant to the worksheet figures and the ten percent rule, Daniels should have paid between $18,000 and $22,000 per month, we cannot conclude that the award of support in the total amount of $13,750 for this fifteen-month period was so "unreasonable, arbitrary, or unconscionable" as to connote an abuse of discretion. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1141. In fact, the magistrate recognized that even if Daniels had to pay child support at the ten percent level of $18,000 to $22,000 per month, he would still have income of over $2 million dollars a year for the years 1991 and 1992. Daniels's first two assignments of error are without merit.

The magistrate was also aware that Daniels would probably never again earn the kind of money he made in the last two years of his career and ordered Daniels to fund a future-needs trust, which Daniels challenges in his third assignment of error.

Daniels was ordered to fund a trust account for Ryan in the amount of $100,000. Frazier would be named trustee and would be permitted to use funds for Ryan's benefit, but only "if his needs cannot be met by the current support paid." Frazier would be required to keep an accounting of all funds from the account. Upon emancipation, any remaining funds would go to Ryan.

Pursuant to R.C. 3111.13(D), "[i]n the best interest of the child, a lump-sum payment or the purchase of an annuity may be ordered in lieu of periodic payments of support." The author of this decision has specifically cited this approach with approval in certain circumstances. See *In re Cross* (Apr. 28, 1993),

Hamilton App. No. C–920113, unreported, 1993 WL 231714 (Bettman, J., concurring).

■ We believe that the magistrate was correct in his recognition that Daniels's big-money days were probably behind him, and that his earnings were greatest at a time when Ryan's needs were least, and we can appreciate his attempt to resolve this problem with a special-needs trust.[6] However, the law clearly states that a lump-sum payment or an annuity is in lieu of periodic payments of support. We cannot see how Daniels can be required to fund this trust and make periodic payments of support. We hold that such a requirement is contrary to law.

Permanent support has never been set in this case. When it is, given the reality of Daniels's present income compared with his past earnings, the court would do well to consider ordering the purchase of an annuity with the $100,000 or the use of that amount as a lump-sum payment in lieu of child support for some fixed period of time. When payment is ordered by lump sum or by annuity, the court has the option to continue its jurisdiction to modify or revoke such an order. R.C. 3111.16.

We thus hold that Daniels's assignment of error challenging the future-needs trust is well taken.

The judgment of the trial court is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this decision.

> *Judgment affirmed in part,*
> *reversed in part*
> *and cause remanded.*

DOAN and PAINTER, JJ., concur.

---

6. While we have found the funding of a trust with a lump sum in addition to periodic payments for support to be contrary to law, it was also error to award any remaining funds to Ryan upon emancipation. If there is a permissible use for a trust, at the end of the term of the trust any remaining funds must be returned to Daniels.