DECISION.
Plaintiff-appellee, Allen H. Miller, filed a compliant for divorce against defendant-appellant, Nancy K. Miller, on October 12, 1994. The case was hotly contested, and the court did not enter a final divorce decree until four years later. During that time, the court held numerous hearings on issues related to property division, custody of the parties' two children and child support.
The parties engaged in extensive negotiations over the issue of property division. One of the assets was appellee's book-value incentive plan, through which he received stock in his employer's corporation. During the negotiations, appellee represented that the stock had no value as of December 31, 1994, the date the parties used as the de facto termination of the marriage. He also provided documentation from his employer to that effect. Subsequently, the parties agreed to an entry dividing their property in which appellee received any interest that he had or would later acquire in the stock received from the book-value incentive plan free and clear of any claim by appellant. The trial court approved the entry on May 4, 1998.
Four days after the court journalized the agreed entry, appellee received a payment of $56,000 for his stock in the book-value incentive plan. Appellant then filed a motion pursuant to Civ.R. 60(B) to set aside a portion of the property settlement based upon appellee's alleged misrepresentation that the stock had no value. She claimed that she should have received fifty percent of the shares of stock in the book-value incentive plan. The trial court overruled the motion. Subsequently, the court entered a final decree of shared parenting and a final decree of divorce. This appeal followed.
Appellant presents three assignments of error for review. In her first assignment of error, she states that the trial court erred in denying her Civ.R. 60(B) motion to set aside a portion of the property settlement. She contends that appellee knew that the book-value incentive plan had a value of approximately $56,000 when the agreed entry was placed of record, and that his failure to disclose this material fact and his misrepresentation of the plan's value justified relief from judgment. We hold that this assignment of error is not well taken.
To prevail on a Civ.R. 60(B) motion for relief from judgment, the moving party bears the burden to demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and the motion is timely made. GTE Automatic Elec., Inc. v. ARC Industries, Inc.
(1976), 47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus. The decision whether to grant relief from judgment lies within the discretion of the trial court. Rose Chevrolet, Inc. v.Adams (1988), 36 Ohio St.3d 17, 20, 520 N.E.2d 564, 566; Adomeitv. Baltimore (1974), 39 Ohio App.2d 97, 103, 316 N.E.2d 469, 475.
Appellant did not specifically state the grounds under which she was seeking relief from judgment in the trial court. She now relies upon In re Murphy (1983), 10 Ohio App.3d 134,461 N.E.2d 910, in which this court affirmed the judgment of the trial court granting a wife's motion for relief from a decree of dissolution. In that case, the wife, a homemaker, signed a separation agreement that was later incorporated into the decree without counsel and with no knowledge of the extent of the marital assets. Over a year later, she hired counsel and discovered that numerous marital assets had not been included in the separation agreement. After discussing the statutory provisions regarding dissolution of marriage that require agreement between the parties, we held that "when a separation agreement omits assets that are substantial in relative amount and material to an informed and deliberate agreement about an equitable division of the property, the statutory requirement has not been met and the ensuing decree has a fatal flaw." Id. at 137, 461 N.E.2d at 915.
We then held that the omissions from the decree in that case rendered it voidable under Civ.R.60(B)(5), the catchall provision, because "[t]he fatal defect is noncompliance with the empowering statute[.]" Id. at 138, 461 N.E.2d at 915. We went on to state:
 Among the factors to be considered by the trial court in determining whether relief from a decree of dissolution based on an incomplete separation agreement should be granted under Civ. R. 60(B) in the first instance (factors that will also be used by a reviewing court in determining whether the trial court abused its discretion) are the following: what caused the delay in making the motion; whether the delay was reasonable; what personal knowledge the movant had about the nature, extent and value of all the marital assets (whether included or omitted); what the movant should have known about them in the exercise of ordinary care; whether the movant expressly or implicitly concurred in the property provisions of the separation agreement; what deceptions, if any, were used by the other spouse; and what has intervened between the decree and the motion (such as, remarriage of either spouse or both spouses).
Id. at 138, 461 N.E.2d at 915-916.
We do not believe that Murphy dictates a reversal in the present case. We first note that although the parties agreed to the property division, this case does not involve a dissolution of marriage, which was an integral part of our decision in Murphy. While agreement is an essential statutory element allowing the court to grant a decree of dissolution, it is not required in a divorce case where the court may decide the property division and other issues. See id. at 137, 461 N.E.2d at 914; In re Perry
(June 29, 1999), Clermont App. Nos. CA98-10-086 and CA98-12-124, unreported.
Further, evidence presented in the trial court supported the conclusion that the stock owned by appellee through the book-value incentive plan had no value as of December 31, 1994, the date agreed upon by the parties as the termination date of the marriage. Whether appellee knew if the plan had value in April 1998, when the settlement negotiations occurred, is irrelevant. Though appellee failed to include the asset in his property statement filed along with his complaint for divorce, the record shows that appellant knew of its existence and sought information about it during discovery. The record does not clearly show that appellee engaged in any fraud, misrepresentation or other misconduct as required by Civ.R. 60(B)(3), which, in our view, is the ground for relief under which appellant should have been proceeding. See Coulson v. Coulson (1983), 5 Ohio St.3d 12, 15,448 N.E.2d 809, 811-812; Cautela Bros. Cement Contractors v.McFadden (1972), 32 Ohio App.2d 329, 331-332, 291 N.E. 539, 541.
The trial court concluded that the parties had agreed to a division of all their property, that the asset in question was disclosed and agreed upon as part of the settlement between the parties, and that the parties were bound by their agreement. There was no omission of a substantial asset as in Murphy, and the record shows that the overall property division in this case was equitable. See Perry, supra; In the Matter of Young v. Young
(Dec. 2, 1994), Portage App. No. 94-P-0002, unreported. Under the circumstances, we cannot conclude that the trial court's decision to overrule appellant's motion to set aside the agreed entry was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,218, 450 N.E.2d 1140, 1142; Henning v. Henning (Mar. 30, 1998), Stark App. No. 1997 CA 00026, unreported; Lenzer v.Lenzer (Nov. 3, 1993), Lorain App. No. 93CA005541, unreported. Accordingly, we overrule appellant's first assignment of error.
In her second assignment of error, appellant states that the trial court erred in not including the $56,000 appellee received from the book-value incentive plan in 1998 as income when calculating child support. She contends that it should have been treated as a bonus received in that year pursuant to R.C.3113.215(B)(5)(d). We hold that this assignment of error is not well taken.
R.C. 3113.215 is a comprehensive enactment governing the procedures for calculating and awarding child support. Marker v.Grimm (1992), 65 Ohio St.3d 139, 140, 601 N.E.2d 496, 497; Murrayv. Murray (Feb. 8, 1999), Warren App. No. CA98-08-097, unreported. Child-support computations under this statute are based on a complicated formula that begins with the gross income of the parents. Robinson v. Robinson (May 8, 1998), Montgomery App. Nos. 16613 and 16614, unreported.
R.C. 3113.215(A)(2) defines gross income as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses to the extent described in division (B)(5)(d) of this section * * * and potential cash flow from any source." In calculating gross income, the trial court must calculate bonus income separate from other income. Under division (B)(5)(d) of the statute, the court includes in the parent's gross income the lesser of the yearly average of all bonuses received during the three years immediately prior to the computation of child support or the total bonuses received during the year before the computation. Robinson, supra; Clay v. Clay (July 19, 1995), Summit App. No. 17014, unreported. In this case, the trial court properly averaged appellee's bonuses of $13,500, $12,000 and $12,000 and included the result of $12,500 in his gross income. See Paulus v. Paulus (1994), 95 Ohio App.3d 612, 616,643 N.E.2d 165, 168; Robinson, supra; Manis v. Manis
(Aug. 22, 1997), Portage App. No. 96-P-0200, unreported.
Appellant argues that the $56,000 appellee received from the sale of stock should have been used in calculating the average bonus. However, R.C. 3113.215(A)(2)(e) specifically excludes from the definition of gross income "nonrecurring or unsustainable income for cash flow items," which are defined as "any income or cash flow item that the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C.3113.215(A)(11). In this case, the trial court made the factual determination that the income appellee received from his shares of stock in the book-value incentive plan was not a bonus, but a one-time payout that would not reoccur. This determination was supported by competent, credible evidence, and, therefore, this court will not disturb it. See McCoy v. McCoy (1995), 105 Ohio App.3d 651,656-657, 664 N.E.2d 1012, 1016; Kroger v. Kroger (Jan. 21, 1998), Richland App. No. 98-CA-54-2, unreported. Accordingly, we hold that the trial court did not err by failing to treat the $56,000 as a bonus, and we overrule appellant's second assignment of error. See Yost v. Unanue (1996), 109 Ohio App.3d 294,297-299, 671 N.E.2d 1374, 1376-1377.
In her third assignment of error, appellant states that the trial court improperly calculated child support. She contends that the child-support obligations of both parents should be offset and that the court should order appellee, who has the larger child-support obligation, to pay the net amount. We hold this assignment of error to be well taken, but not entirely for the reasons stated by appellant.
Generally, decisions regarding child support lie within the discretion of the trial court. Pauly v. Pauly (1997), 80 Ohio St.3d 386,390, 686 N.E.2d 1108, 1111. However, the terms of R.C.3113.215 are mandatory and must be followed literally and technically in all respects. Id. at 389, 686 N.E.2d at 1111;Marker, supra, at paragraph two of the syllabus. R.C.3113.215(B)(1) requires that the calculation of support be made in accordance with the basic child-support schedule set forth in R.C.3113.215(D) and the applicable model worksheet set forth in R.C.3113.215(E), for cases involving a sole residential parent or a shared parenting order, or in R.C. 3113.215(F), for cases involving split parental rights and responsibilities. Rock v.Cabral (1993), 67 Ohio St.3d 108, 110, 616 N.E.2d 218, 221;Marker, supra, at 141, 601 N.E.2d at 497-498. The trial court must actually complete the appropriate child-support worksheet and make it a part of the record. Marker, supra, at paragraph one of the syllabus.
The amount calculated through line eighteen of the applicable worksheet is "rebuttably presumed" to be the correct amount of child support due. R.C. 3113.215(B)(1); Rock, supra, at 110,616 N.E.2d at 221. Court-ordered deviations from the schedule and worksheet are not permitted absent strict compliance with the requirements of R.C. 3113.215((B)(1)(a) and (b). Any deviation must be entered by the court in its journal and must include findings of fact to support it. Marker, supra, at paragraph three of the syllabus.
In this case, the trial court approved a shared-parenting plan, which specifically provides that both parents are the residential parents of the parties' two children without regard to where the children are physically located and that the children are to live with each of their parents on alternate weeks. R.C.3109.04(A)(2) provides that the trial court must determine the child-support obligations of the parents under a shared-parenting order in accordance with the provisions of R.C. 3113.215. Martinv. Martin (1993), 66 Ohio St.3d 110, 115, 609 N.E.2d 537, 541.
As to child support, the shared-parenting plan provided that "[c]hild support shall be calculated based upon split custody." R.C. 3113.215 defines "split parental rights and responsibilities" as "a situation in which there is more than one child who is the subject of an allocation of parental rights and responsibilities and each parent is the residential parent and legal custodian of at least one of those children." Trial courts are obligated to apply that section and its accompanying worksheet when each parent is the residential parent, and the only residential parent, of at least one child. Paluch v. Paluch (June 3, 1998), Summit App. No. 18515, unreported. See, also, Beckley v. Beckley (1993),90 Ohio App.3d 202, 628 N.E.2d 135; Gillum v. Malishenko
(July 19, 1996), Greene App. No. 95CA114, unreported; Jordan v.Bailey (Aug. 5, 1993), Allen App. No. 1-93-2, unreported. Consequently, the parties' custody arrangement in this case does not constitute split parental rights and responsibilities.
The trial court used the worksheet set forth R.C. 3113.215(F) for split parental rights and responsibilities to calculate child support. That worksheet differs dramatically from the worksheet set forth in division (E), which is for cases involving a sole residential parent or a shared-parenting order. Pauly, supra, at 388, 686 N.E.2d at 1110. Specifically, the worksheet in division (F) allows the parents' individual child-support obligations to be set off against each other pursuant to R.C. 3113.215(C). See id.
at 387-388, 686 N.E.2d at 1110; Beckley, supra, at 203,628 N.E.2d at 135, fn. 1.
The Ohio Supreme Court has specifically held that R.C.3113.215(B)(6)(a) applies in cases involving shared parenting, and not R.C. 3113.215(C), which contains the set-off provision.Pauly, supra, at 387-389, 686 N.E.2d at 1110-1111; Weinberger v.Weinberger (May 15, 1998), Hamilton App. No. C-970552, unreported. R.C. 3113.215(B)(6) requires the court to calculate support using the worksheet set forth in division (E) of the statute in a case where the court makes an order of shared parenting. The supreme court has further stated that while R.C. 3113.215(B)(6) does not provide for automatic credit for the time spent with each parent under a shared-parenting order, the trial court may deviate from the amount calculated under the worksheet if the court finds that the amount of child support would be unjust or inappropriate to the children or either parent and would not be in the best interest of the children. R.C. 3113.215(B)(6)(a) and (b); Pauly,supra, at 389, 686 N.E.2d at 1111.
Because the present case involved a shared-parenting order, the trial court should have calculated support using the worksheet in R.C. 3113.215(E), as required by R.C. 3113.215(B)(6), and included that worksheet in the record. Then, it could have decided if a deviation was appropriate based upon the time each party spent with the children and any other appropriate statutory factors and made findings of fact supporting the deviation. Further, the parties' combined gross income exceeded one hundred fifty thousand dollars. Consequently, the court should have applied R.C. 3113.215(B)(2)(b). See Frazier v. Daniels (1997),118 Ohio App.3d 425, 428-429, 693 N.E.2d 289, 291-292. The trial court's failure to fully comply with the provisions of R.C.3113.215 constituted reversible error. See Marker, supra, at 142-143, 601 N.E.2d at 499; Dilacqua v. Dilacqua (Sept. 3, 1997), Summit App. No. 18244, unreported.
In this case, the parties agreed to use the worksheet in division (F) for split parental rights and responsibilities. In regard to this type of parental agreement, the Ohio Supreme Court has held that the trial court has the obligation to test any proposal of the parents to see if it meets the provisions of R.C.3113.215 under the literal compliance standard of Marker, supra, even if the parties agree between themselves to a different amount of child support. DePalmo v. DePalmo (1997), 78 Ohio St.3d 535,540, 679 N.E.2d 266, 270; Lindsey v. Lindsey (Oct. 1, 1998), Cuyahoga App. No. 74250, unreported. It has stated:
 The law favors settlements. However, the difficult issue of child support may result in agreements that are suspect. In custody battles, choices are made, and compromises as to the child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures. The compromises may be in the best interests of the parents but not of the child. Thus, the legislature has assigned the court to act as the child's watchdog in matters of support.
DePalmo, supra, at 540, 679 N.E.2d at 270.
Consequently, after the trial court determined the amount of child support due using the worksheet for shared parenting under R.C. 3113.215(E), it should have compared that amount to the amount of support due using the worksheet in division (F) for split parental rights as agreed to by the parties. It should have then determined if a deviation from the amount provided under the worksheet for split parental rights was in the best interest of the children. Further, appellant is correct in her assertion that the trial court improperly calculated support using the division (F) worksheet by failing to set off the parents' support obligations against each other. See Beckley, supra, at 203,628 N.E.2d at 135, fn. 1. For these reasons, we sustain appellant's third assignment of error, reverse that part of the judgment of the trial court regarding child support and remand the matter for recalculation of child support in accordance with law.
Judgment affirmed in part and reversed in part, andcause remanded.
 Doan, P.J., Gorman and Painter, JJ.
 Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.