OPINION
This matter is before us on the appeal and cross-appeal of the parties to a paternity action. Plaintiff-Appellant/Cross-Appellee, Kathleen O'Herron (Kathleen), presents the following assignments of error:
 I. The trial court erred in finding material prejudice to bar the mother's claim for retroactive child support.
 II. The trial court's denial of child support as of the date of birth is contrary to public policy.
 III. The trial court erred by barring the minor child's claim for retroactive child support.
 IV. The trial court erred by not allowing the natural mother to recover her birth expenses., Defendant-Appellee/Cross-Appellant, Egil Tomson (Egil), claims the following cross-assignments of error:
 I. The trial court abused its discretion when it failed to consider that the Appellee relied [on the fact] that the Plaintiff-Appellant said she was taking precautions.
 II. The trial court abused its discretion when it failed to consider the relevant factors listed under R.C. 3113.215(B)(3), which may allow the court to deviate from the guidelines of support.
 III. The trial court abused its discretion when it failed to impute a higher income for the Plaintiff-Appellant.
After considering the assignments of error, we find the first assignment of error well-taken. Accordingly, this case will be remanded to the trial court for calculation of appropriate support retroactive to birth. In all other respects, the trial court's decision is affirmed. An explanation of our opinion follows.
 I
As we mentioned, the first assignment of error is based on the trial court's failure to award child support retroactive to birth. In this regard, the trial court noted that child support in parentage actions is normally made retroactive to the date of birth, unless there is an affirmative showing of laches. The trial court found such an exception, based on Kathleen's knowledge of her rights and unexcused delay of over five years in bringing suit. Additionally, the trial court relied on the material prejudice to Emil. This latter finding was based on the court's conclusion that Emil incurred debt he otherwise would have avoided if support had been ordered near the time of birth.
In the first assignment of error, Kathleen argues that a natural father's arrangement of financial affairs is insufficient to establish material prejudice under Ohio law. Emil did not respond to this assignment of error in his brief or in his reply brief.
As an initial point, we note that laches was not raised as an affirmative defense in Emil's answer at the trial court level. Normally, this would result in waiver of the defense. However, laches appears to have been tried with at least the implied consent of the parties. Therefore, the trial court correctly considered whether laches could prevent a retroactive award of support. See, e.g., McCabe/Marra Co. v. Dover (1995), 100 Ohio App.3d 139,148, and Blevins v. Sorrell (1990), 68 Ohio App.3d 665,671-72. We also note that Kathleen did not raise waiver of the defense as an issue on appeal.
When we review trial court support orders, our role is limited to deciding if the court abused its discretion, i.e., we consider whether the trial court's attitude was "unreasonable, arbitrary, or unconscionable." Booth v. Booth (1989), 44 Ohio St.3d 142,144. Nonetheless, we may still find trial court decisions unreasonable if they are not supported by a sound reasoning process.AAAA Enterprises, Inc. v. River Place Community Urban RedevelopmentCorp. (1990), 50 Ohio St.3d 157, 161.
As the trial court said, support in parentage actions is generally awarded from the date of a child's birth. See, e.g.,Seegert v. Zietlow (1994), 95 Ohio App.3d 451, 459; Beach v.Poole (1996), 111 Ohio App.3d 710; and Frazier v. Daniels (1997),118 Ohio App.3d 425, 428. However, laches may apply and may prevent a retroactive support award, even when the parentage action is filed before the statute of limitations has expired (the child's eighteenth birthday, plus five years). Wright v. Oliver
(1988), 35 Ohio St.3d 10. According to the Ohio Supreme Court,
 the elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. * * * Prejudice is not inferred from the mere lapse of time and "`in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim.'"
State ex rel. Mallory v. Pub. Emp. Retirement Bd. (1998), 82 Ohio St.3d 235,244 (citations omitted).
According to the testimony in the present case, the minor child (Kelsey) was born on May 3, 1993, but the paternity action was not filed until December 3, 1998. At the time Kathleen became pregnant, Emil was married to another woman. Indeed, he was still married, but was separated, at the time of the support hearing. Kelsey was not "planned" by either party, and appears to have been the result of a birth control "accident." When Emil was told about the pregnancy, he urged Kathleen to have an abortion, but she did not want to do so. According to Emil, Kathleen agreed that he would not have to pay child support and would never be financially burdened by the child. His description of the agreement was that "[h]e would always be good to the child but he would never have to go bankrupt or anything for the child." Kathleen, of course, disputed this and claimed that no agreement was ever made.
In any event, Emil had contact with Kelsey after she was born, and she knows he is her father. He lives out of state and visits from time to time. He has never paid any support, but has brought a small toy or gift on those occasions when he visits.
Kathleen's explanation for the delay in filing was that she tried to pursue other avenues to get voluntary support from Emil. She discussed support with him on various occasions, and took paperwork on support tables to New York City around the time of Kelsey's second or third birthday. She also arranged an appointment for herself and Emil with the administrative officer for the county support agency in October, 1998, but this did not work out. According to Kathleen, Emil gave various reasons why he couldn't pay support, including his wife's health and some financial problems from a business he and his wife had owned in the early 1990's.
The more formal attempts to get support occurred after Kathleen was terminated from her job as Senior Human Resources Director for Victoria's Secret. Up to that point, Kathleen had made a substantial income in the human resource field, ranging from about $65,000 per year to a high of more than $84,000. During the same time period, Emil also made considerable amounts of income, ranging from a high of $119,548 in 1996, to around $86,560 in 1998.
Both parties were having financial problems at the time of the hearing. Emil's position as a cameraman with "Good Morning America" had been eliminated, and he was no longer able to make overtime. He was still employed by ABC after the downsizing, but his income was limited to a base salary of about $59,000. By the same token, Kathleen lost her job with Victoria's Secret in 1998, and was working as a freelance consultant. Her 1999 income was only about $2,500.
The magistrate and trial court recognized these points. In particular, the magistrate noted that Kathleen was a sophisticated businesswoman, knew where Emil was at all times, wanted him to pay support, and did not bring an action against him. The magistrate also commented that Emil relied on Kathleen's inaction and her apparent assent to his failure to pay support during the first five years of Kelsey's life. According to the magistrate, this inaction caused Emil to incur "many charges to charge accounts during that time, * * * all the time knowing he had a child." Likewise, the trial court focused on these points, by noting that Kathleen's unofficial attempts to obtain support could not legally constitute a timely assertion of her rights. Additionally, the court commented that Emil "ordered his financial affairs and incurred debt that he would not have if he were ordered to pay support at or near the time of the child's birth."
We agree with the magistrate and the trial court that the delay may not have been excusable, and that Kathleen knew of her right to obtain support. However, we must disagree with the conclusion that Emil was "materially prejudiced" by his assumption of financial obligations after the child's birth. Unfortunately, the case law simply does not support a finding that material prejudice can be created by a parent's assumption of other financial obligations.
As we mentioned, the Ohio Supreme Court said in Wright said that laches can apply to parentage cases even if they are brought before the statute of limitations has expired. However, the Supreme Court stressed that laches may only be applied if the defendant shows `material prejudice." 35 Ohio St.3d 10, at syllabus. In Wright, a paternity action was filed about one and a half years after the child's birth, but was dismissed. Another action was then filed four years later. At that point, the defendant claimed he was prejudiced by the lapse of time for two reasons: 1) potential witnesses had either died or could not be located; and 2) he had incurred obligations he would not have undertaken if he had been held responsible for support in the earlier case. Id. The Supreme Court rejected both these arguments. First, the court noted that scientific evidence of paternity is highly reliable and accurate. Second, the court said that the defendant's "interim expenditures and family obligations have no relevancy on the question whether he is the biological father." Id.
Retroactive support was not directly discussed in Wright, as the court was considering only whether the paternity action itself was barred by laches. Id. at 11. However, subsequent lower court decisions have relied on Wright in rejecting a father's claim that assuming intervening financial obligations caused him to be materially prejudiced by delay. For example, in State ex rel.Scioto Cty. Child Support Enf. Agency v. Gardner (1996), 113 Ohio App.3d 46, the paternity suit was not filed until thirteen years after birth. Among other things, the natural father argued that he was materially prejudiced because he would have considered his son when making financial plans if he had been aware of his existence. Relying on Wright, the Fourth District Court of Appeals rejected this argument. Id. at 58. The Fourth District also relied on another Supreme Court case, which had held that:
 "[t]he mere inconvenience of having to meet an existing obligation imposed not only by statute but by an order of judgment of a court of record at a time later than that specified in such statute or order cannot be called material prejudice."
Id., citing Smith v. Smith (1959), 168 Ohio St. 447. Similar reasoning was used to reject a finding of material prejudice inFisher v. Call (1994), Morrow App. No. CA-797, unreported, p. 1 (" `the mere delay in incurring financial obligations for which the father would otherwise have been responsible does not constitute the requisite `material prejudice.'"), and Payne v.Cartee (1996), 111 Ohio App.3d 580, 590-91 (rejecting father's claim that he was materially prejudiced by the lapse of time because he had married and had incurred financial obligations in reliance on the mother's failure to file a paternity action).
Furthermore, other cases considering laches indicate that showing "material prejudice" is difficult. Typically, material prejudice may be found if the father is deprived of any meaningful relationship with the child during minority. See, e.g., Park v.Ambrose (1993), 85 Ohio App.3d 179, 184-85 (mother's claim for retroactive support is barred by laches where the father was deprived of any meaningful relationship during the child's minority); State ex rel. Donovan v. Zajac (1998), 125 Ohio App.3d 245
(twenty year delay did not cause material prejudice where father knew of child's existence and failed to assert rights during minority. Retroactive support awarded to date of birth); and Shockey v. Blackburn (May 17, 1999), Warren App. No. CA98-07-085, unreported (father showed material prejudice where mother delayed nine and a half years in bringing suit, during which father made good faith effort to support child by paying over $45,000, and helped with additional expenses like purchase of chair lift and van).
In contrast, Emil was not deprived of any relationship with his daughter. Moreover, the fact that he may have assumed other financial obligations does not constitute "material prejudice" under applicable case law. Accordingly, we are required to find that the trial court abused its discretion because its decision was not supported by sound reasoning.
As a further matter, we note that we have not found evidence in the record indicating that Emil took on financial and other obligations in reliance on Kathleen's failure to file a paternity action. Specifically, while the transcript reveals that Emil had substantial credit card debt (about $15,950), and $10,500 in personal loans at the time of the August, 1999 support hearing, there was no indication that Emil incurred this debt in reliance on Kathleen's failure to file a paternity action. In fact, he did not even say when the credit card debt was incurred, nor were bills submitted to the trial court to show when the debt arose.
Emil did testify that the personal loans were incurred in connection with a labor strike at his place of employment, which occurred between November, 1998, and January, 1999. Because of the strike, his gross income as of May 19, 1999, was only about $26,393. Since the paternity action was filed in December, 1998, this debt clearly had no relationship to any delay in filing.
Based on the preceding discussion, the first assignment of error is sustained. This action will be reversed and remanded to the trial court for calculation of appropriate amounts of support due between May 3, 1993, and December 3, 1998 (the date the paternity complaint was filed), bearing in mind the respective income of both parties during the time in question.
 II
In the second assignment of error, Kathleen contends that denying child support as of the date of birth is contrary to public policy. As support for this proposition, Kathleen relies on the statutory duty to support dependent children and on case law which focuses on the importance of this statutory duty. In view of our disposition of the first assignment of error, this assignment of error is moot and will not be addressed.
 III
In the third assignment of error, Kathleen contends that the trial court improperly imputed laches to Kelsey's claim for retroactive support. Again, Emil has not responded to this point.
The paternity complaint was filed by Kathleen on her own behalf and on behalf of Kelsey. In the decision awarding support, the magistrate did not specifically mention laches, nor did she separately address any claims of the minor child. Instead, the magistrate made the comments outlined above about Kathleen's failure to institute a support action, and the debt that Emil had incurred. The magistrate then awarded support as of December 28, 1998 (which the magistrate mistakenly thought was the filing date of the paternity action).
Subsequently, Kathleen objected to the magistrate's decision. Her objections raised the issue of laches, and cited numerous cases relevant to the question of whether laches could properly be applied. However, Kathleen did not object to the decision on the basis that it improperly imputed laches to Kelsey's claim. The trial court's decision overruling the objections likewise did not address this matter.
Ordinarily, we consider that error is waived if it is not brought to the trial court's attention. We do notice plain error, but "`with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Stiverv. Miami Valley Cable Council (1995), 105 Ohio App.3d 313, 318. Despite our normal reluctance to recognize plain error, we would be required to do so in this case if we had not already decided that laches cannot be applied. Specifically, if Kathleen's claim were barred by laches, Kelsey would still be able to assert a claim for retroactive support.
We have previously held that a child's claim against a putative father is "separate and distinct" from the mother's similar claim. Stephens v. Paris (July 12, 1993), Clark App. No. 3024, unreported, p. 1. In Stephens, we refused to apply resjudicata to bar a minor's paternity action, even though the mother had previously filed and lost a paternity action against the same man. Stephens did not directly deal with support or laches, but its reasoning is fully applicable to the present case. Furthermore, when other courts have been confronted with this issue, they have refused to apply laches to bar a minor's claim for support. See Park, supra, 85 Ohio App. 3d at 185, and Gilpinv. Smith (July 8, 1996), Clermont App. No. CA95-10-077, unreported, p. 2 (both barring mother's claim because of laches, while allowing child's claim for support). See also, Rees v.Heimberger (1989), 60 Ohio App.3d 45, 46 (holding that resjudicata may not be applied to bar minor's paternity action, even though mother's complaint was previously dismissed with prejudice).
We do note that a presumption exists that funds sought for back support were spent by the mother on necessities for raising the child. State ex rel. Donovan v. Zajac (1998), 125 Ohio App.3d 245, citing Smith v. Smith (1959), 168 Ohio St. 447. Based on this presumption, the court in Zajac awarded the full amount of back support to a mother and refused to award any sum to the minor child. The court distinguished Rees and Park, saying "the primary rationale for declaring that the child's claim was separate and distinct [in those cases] was that to hold otherwise would have barred any recovery for back child support on behalf of the child." 125 Ohio App.3d at 253. However, the court in Zajac
also relied on the lack of evidence indicating that the mother failed to spend the funds on the child. Id. at 252.
We need not resolve this point. Since Kathleen can now recover retroactive support, the trial court's failure to consider Kelsey's claim was not "a manifest miscarriage of justice." In this regard, we stress that no evidence was presented to indicate that Kathleen failed to spend funds on Kelsey. Consequently, the third assignment of error is overruled.
 IV
The fourth assignment of error is based on the trial court's failure to award birth expenses to Kathleen. According to Kathleen, the trial court should have accepted her exhibits detailing those costs. We have carefully reviewed the record on this point. At the hearing, Kathleen did testify that she had sustained costs for Kelsey's birth. However, she did not submit any evidence on the amount of the costs, nor did she ask to submit exhibits on this issue at the hearing. Both the magistrate and the trial court specifically relied on this failure of proof when they rejected the claim for birth expenses.
Previously, we have held that the mother has the burden of proof by a preponderance of the evidence in paternity cases.Jackson v. Jackson (May 26, 2000), Montgomery App. No. 18007, unreported. This would include proof of expenses caused by the child's birth. Since no such evidence was presented, we find no abuse of discretion in the failure to award birth expenses. Accordingly, the fourth assignment of error is overruled.
 V
Having disposed of Kathleen's assignments of error, we now consider the points raised by Emil. In the first cross-assignment of error, Emil contends the trial court erred by failing to consider his reliance on Kathleen's assurances that she took precautions to prevent pregnancy. We fail to see the relevance of this fact. As we mentioned earlier, the pregnancy was not planned by either party. Unfortunately, pregnancies occur on occasion despite all precautions. This does not, however, lessen the minor child's need for support. We add that we have found no case law (nor has any been cited) suggesting that a parent's duty to support may be avoided based on the accidental nature of a pregnancy.
In light of the preceding analysis, the first cross-assignment of error is without merit and is overruled.
 VI.
In the second cross-assignment of error, Emil claims that the trial court erred because it did not consider two statutory factors that would allow a reduction in child support. The first factor is cost of visitation, and the second is the higher cost of living in New York and New Jersey, including taxes. Again, we review the order for abuse of discretion. Booth (1989),44 Ohio St.3d at 144.
Under Ohio law, the amount calculated under the child support guidelines is rebuttably presumed to be correct. R.C.3113.215(B)(1). R.C. 3113.215(B)(3) allows courts to deviate from the guidelines and to consider certain factors. However, any court-ordered deviation must be entered into the court's journal and must be supported by findings of fact. Marker v. Grimm
(1992), 65 Ohio St.3d 139.
In this case, the magistrate figured child support based on the Ohio guidelines for child support, and credited $2,960 in local taxes and $1,200 in mandatory union dues against Emil's annual gross income. However, the magistrate did not reduce support by considering any deviations from the guidelines. The pertinent deviations are R.C. 3113.215(B)(3)(d) [extraordinary visitation costs] and R.C. 3113.215(B)(3)(i) [the amount of federal, state, and local taxes paid or estimated to be paid by one or both parents].
At trial, Emil testified that the cost of flying round trip from New Jersey was about $250. He also said he would like to visit Kelsey once a month, if finances permitted. However, he indicated that he had not seen her for six months, or since the time he was served with paternity papers. After hearing the testimony, the magistrate awarded monthly visitation, but did not reduce child support to account for visitation costs.
Under the circumstances, we cannot say the failure to account for travel costs was arbitrary, unconscionable, or unreasonable. Since Emil chose not to see his daughter for six months even before support was ordered, the magistrate may have viewed his desire for more frequent visitation with some skepticism. Once a "track record" of visitation is established, Emil can file a motion to modify support.
We also find no abuse concerning the cost of living and tax issues. The only evidence offered about taxes were tax returns and Emil's testimony that 50% of his gross pay went to taxes. However, the 50% figure is not supported by the tax returns. For example, for the tax year 1998, Emil's return indicates that less than 22% of gross earnings were consumed by taxes. Specifically, the return shows payment of $8,616 in federal taxes and $9,382 in state and local taxes on earnings of $82,807 (this earnings figure includes only a very small amount of wages which may be the earnings of Emil's wife). By contrast, in 1997, when Kathleen had a similar amount of income, she paid about 23% of her gross income in federal, state, and local taxes ($18,404.65 in taxes on income of $79,559.95).
Second, the only "cost of living" testimony offered was the generic statement that costs were higher in New York. As an example, Emil agreed with his counsel that "cheeseburgers" were a "little bit higher" in New York. We find this evidence to be both vague and unconvincing. We also note that Emil did not present himself as an expert on cost of living factors for various parts of the country, nor did he present any evidence other than his own testimony. Compare, Vancott-Young v. Cummings (May 24, 1999), Warren App. No. CA98-09-122, unreported (holding that court is not required to modify child support based on difference in living costs, and further noting that appellant was not expert on relevant cost of living factors for different regions), andLuthman v. Luthman (Oct. 2, 1991), Summit App. No. 15104, unreported, p. 2 (rejecting "cost of living" argument where appellant did not present documentary evidence and only evidence was his own testimony).
Under the circumstances, we cannot find that the trial court abused its discretion in failing to deviate from the child support guidelines. Consequently, Emil's second assignment of error is overruled.
 VII.
The final assignment of error is based on the trial court's failure to impute a higher income to Kathleen. Again, we review this decision for abuse of discretion. In Rock v. Cabral (1993),67 Ohio St.3d 108, the Ohio Supreme Court said that:
 [w]hether a parent is "voluntarily underemployed" within the meaning of R.C. 3113.215(A)(5), and the amount of "potential income" to be imputed to a child support obligor, are matters to be determined by the trial court based on the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion.
Id. at syllabus. For quite some time, our own appellate district has held that in deciding if an individual is "voluntarily underemployed,"
 [t]he test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned.
Woloch v. Foster (1994), 98 Ohio App.3d 806, 811.
Since Kathleen was terminated from her last job, it is hard to conclude that the change was "voluntary." On the other hand, her choice to pursue free-lance work rather than look for another corporate position can be said to be voluntary. Nonetheless, even if the change is considered voluntary, we cannot say that the trial court abused its discretion in failing to impute additional amounts of income.
Although Kathleen's income before 1993 is not revealed in the record, she appears to have had a successful career as a human resources consultant before Kelsey's birth. After the birth, Kathleen's ability to market and deliver consulting services was affected. As a result, Kathleen obtained employment in the corporate world, and was able to make significant amounts of income between 1995 and 1998, when she was terminated from her job as senior manager of human resources. After being terminated, Kathleen again returned to free-lance work. However, her ability to generate free-lance income was hampered by her inability to travel overnight and put in long hours, and by the fact that she had been terminated from her previous job.
After being terminated in 1998, Kathleen did not actively seek work, because Kelsey was having a difficult year in Kindergarten. Kathleen did say she had "more actively" sought free-lance work in 1999. Her income (including severance pay and unemployment benefits), was about $33,641 in 1998, and was only about $2,500 in 1999, as of the time of the August hearing. Kathleen did not testify that she had looked for corporate employment since being fired.
In the child support worksheet, the magistrate used a figure of $20,000 for Kathleen's gross income. This was apparently based on the affidavit of income and expenses that Kathleen filed with the court. In overruling Emil's objections, the trial court noted that there was no evidence that Kathleen was deliberately under-employed. While one might question the logic of pursing free-lance work, when Kathleen admittedly could not put in the effort that might make such work financially successful, we cannot say that the trial court abused its discretion in finding that Kathleen was not deliberately under-employed. Kathleen did explain that her failure to more actively seek work was due to her daughter's struggles in school, and no evidence was submitted to dispute this fact.
By the same token, we think the question is close, and may be a subject for future modification of the child support award. Simply put, a parent who is capable of being self-supporting may not indefinitely sit by and let the other parent bear a disproportionate share of expenses. Our decision is also colored by the fact that the evidentiary record on this point was sparse. Information about prevailing job opportunities and detailed examination of Kathleen's attempts to find work would have aided the trial court's consideration, as well as our review of this matter.
In light of the foregoing analysis, we find the third cross-assignment of error without merit.
Based on the preceding discussion, the first assignment of error is sustained, the second assignment of error is moot, and the third and fourth assignments of error are overruled. Additionally, the first, second, and third cross-assignments of error are overruled. This case is reversed in part and is remanded to the trial court for calculation of the appropriate amount of support due from the date of birth. In all other respects, the judgment of the trial court is affirmed.
 ____________________________ BROGAN, J.
WOLFF, J., and FAIN, J., concur.