OPINION.
Plaintiffs-appellants Lakesha Carr and her minor daughter Mirakle Carr appeal from the Hamilton County Juvenile Court's order that defendant-appellee Jeff Blake pay child support in the amount of $5,000 per month. They contend that the juvenile court's failure to complete a child-support computation worksheet was a per se violation of its duties, mandated by R.C. 3113.215, and requires reversal of the support order and a remand to the juvenile court. Because the extensive record, including the juvenile court's eight-page written decision, the parties' sample worksheets, and the transcript of the support hearings, affords the opportunity for meaningful review and ensures that the court considered the correct factors in reaching its determinations, we hold the error to be harmless.
 FACTS
Blake, a professional football player for the Cincinnati Bengals, and Lakesha Carr were involved in a three-year affair from which Mirakle was born in July 1997. During the affair, Blake gave numerous gifts to Carr, including nearly $50,000 to purchase a BMW automobile. In July 1998, Carr filed this action to establish paternity and to compel support from Blake. Blake admitted paternity and the court adjudicated him the father of Mirakle.
In December 1998 and January 1999, the juvenile court held a hearing to determine the amount of child support due for Mirakle. Over three days of hearings, testimony was taken from Lakesha Carr, Blake, his accountant, his retained expert, a University of Dayton economics professor who testified "how to determine an appropriate level of child support on incomes above the guideline amounts," an accountant retained by the Carrs, and Blake's wife. During the hearings, the court frequently asked questions of the witnesses. Numerous documents were admitted into evidence, including a U.S. Department of Agriculture report on family expenditures on children, Blake's NFL contracts, his endorsement contracts, business records, financial statements, his income tax returns filed jointly with his wife, Lakesha and Mirakle's medical bills, Lakesha Carr's canceled checks and bank statements, her financial statement, and the Carrs' estimated monthly expenses. The record also contains sample child-support worksheets submitted by the parties' counsel to the juvenile court in support of their arguments.
Lakesha Carr testified that she had not worked since 1995, and that her sole source of income in 1998 was Blake's child support paid for the benefit of Mirakle. She received no child support from her imprisoned ex-husband for the care of their then eight-year-old child. From July 1997 to September 1998, Blake made payments equivalent to $3,000 per month to the Carrs. In September 1998, the court increased the amount to $4,000 per month and ordered Blake to provide medical insurance coverage for Mirakle during the pendency of this matter.
Blake stated that while he desired no contact with Mirakle, he would provide support for her. From his testimony and from the evidentiary materials offered during the hearings, it is unrebutted that Blake earned approximately $2.8 million in gross income during 1998. The child-support worksheet submitted by the Carrs with their written closing argument identifies Blake's 1998 income as $2,818,403.
Blake's economist expressed an opinion that a parent with income similar to Blake's would spend approximately $27,800 per year to support one child, absent unusual medical needs. He testified that information from the Department of Agriculture indicated that per-child spending to support one child of Mirakle's age would not exceed $12,000 per year.
The Carrs presented evidence in the form of a monthly budget of expenses, claiming that $15,945 per month was needed to support Mirakle. These monthly expenses included $6,400 per month in nonrecurring expenses for interior design and furnishings, and $3,300 per month for the purchase of a $300,000 home. Lakesha Carr testified that, at the time of the hearing, she lived in a two-bedroom apartment. Despite preparing a monthly budget indicating expenses of nearly $16,000, to protect Mirakle from income reductions at the end of Blake's NFL career, the Carrs urged the juvenile court to order child support of $280,000 per year — the 10% rate of child support indicated by the statutory guidelines for parental income over $150,000 per year.
 The Juvenile Court's Order Setting Support
On February 19, 1999, the juvenile court journalized an eight-page order setting support. The court first noted, "This case * * * is simply about how can this child be best served by an absentee father and a mother who clearly views the child as her source of income." Then, the juvenile court ordered Blake to do the following:
 (1) pay $4500 per month in support plus 2% poundage through the Child Support Enforcement Agency;
(2) provide medical insurance coverage for Mirakle;
(3) pay all remaining costs of birth and neonatal care;
(4) pay 100% of all out-of-pocket medical and dental expenses;
(5) retire a child-support arrearage of $25,000;
 (6) purchase a $300,000 term life and disability insurance policy for the benefit of Mirakle during her minority; and
 (7) deposit $500 per month in additional support directly into a savings account to ensure Mirakle's financial security.
Concluding that Blake's "earning capacity may well be drastically reduced in the future and [that Lakesha Carr] has shown no indication that she intends to provide for the child independent of [Blake's] contribution," the juvenile court ordered that funds may not be withdrawn from the savings account during Mirakle's minority without the written agreement of the parties or the permission of the court.
The juvenile court denied the Carrs' request that Mirakle take Blake's last name, denied their request for Blake to pay their attorney fees, and retained further jurisdiction over the matter.
 Harmless-Error Analysis
In four assignments of error, the Carrs contest both the form of the juvenile court's order and the evidence supporting its deviation from the statutory guidelines. The Carrs first claim that the juvenile court impermissibly set Blake's child-support obligation without first preparing the worksheet required by R.C.3113.215. By not preparing a worksheet, the Carrs argue, the juvenile court failed to determine Blake's 1998 income, and it then failed to compute what the statutorily mandated "10% rule" support amount was before deviating from that amount.
In Marker v. Grimm (1992), 65 Ohio St.3d 139, 142, 601 N.E.2d 496,498-499, the trial court failed to complete a worksheet, and the transcript of the support hearing was "devoid of any information concerning many of the items necessary to complete a worksheet." In deviating, the court also did not make specific findings that the mandated amount of child support under the guidelines would be unjust and would not be in the best interests of the child. Id. at 143, 601 N.E.2d at 499. The Ohio Supreme Court held that a trial court's failure to complete the required child-support worksheet or to make that worksheet a part of the record is error as a matter of law. Id. at paragraphs one and two of the syllabus.
Here, the juvenile court chose not to complete a worksheet prior to rendering its decision. It justified this omission because (1) "the statutory chart is of no assistance in many high-income cases," (2) Blake was providing all the support and there would be no relative percentage to calculate, and (3) Blake conceded that his income was "beyond the worksheet guidelines." These justifications are inadequate. The statutory scheme requires that a calculation of the child-support obligation be made in accordance with the applicable worksheet in R.C. 3113.215(E) or (F). Use of the worksheet is mandatory. R.C. 3113.215(B); Markerv. Grimm at paragraph two of the syllabus. The trial court, therefore, erred in failing to complete a worksheet.
This conclusion does not, however, end our analysis. Reversal and remand are not always dictated when a court does not comply with R.C. 3113.215. See, e.g., McCoy v. McCoy (1995), 105 Ohio App.3d 651,655-656, 664 N.E.2d 1012, 1015-1016; Seni v. Seni (Jan. 23, 1998), Montgomery App. No. 16600, unreported; Guidera v. Guidera
(June 30, 1993), Allen App. No. 1-93-16, unreported. Civ.R. 61 states that "no error or defect in any ruling or order * * * is ground for * * * vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." See, also, R.C. 2309.59. This court will not, therefore, reverse the order setting support in this case unless the failure to complete and journalize the worksheet affected a substantial right of the Carrs.
The primary purpose for employing and including the worksheet in the record is to afford meaningful appellate review of the juvenile court's actions. Marker v. Grimm, 65 Ohio St.3d at 142,601 N.E.2d at 498. Another purpose of the worksheet is to ensure that the court has evaluated the correct factors in setting child-support obligations. The worksheet is a guide for the trial court through the statutory scheme, beginning with a computation of the parents' gross incomes. See R.C. 3113.215. The court must then consider a number of factors that vary with the nature of the support obligation. For example, the worksheet employed in sole-residential-parent cases differs greatly from that employed in split-parental-rights-and-responsibilities cases. Where the trial court employs the wrong worksheet, it considers the wrong factors, and its ruling must be reversed. See Miller v. Miller
(Sept. 17, 1999), Hamilton App. No. C-980892, unreported.
Here, unlike in Marker v. Grimm, the extensive record available for review, including the parties' worksheets, the juvenile court's written decision and the transcript of the hearings, is replete with "information concerning many of the items necessary to complete a worksheet." Unlike in Miller v. Miller, the court considered the correct factors in reaching its findings. Specifically, the juvenile court did not fail to determine Blake's gross income as a predicate to its later calculations. As the testimony and the exhibits disclosed, and as the Carrs well knew when they filed their proposed worksheet, Blake's 1998 gross income was $2.8 million. The value for his adjusted gross income, taken from the testimony, and used by the juvenile court in its hypothetical example on the third page of its order, was $2.4 million. Moreover, the juvenile court stated, on the second page of its order, that the Carrs had requested $280,000 annual child support "relying on the terminal percentage of 10+% annual income." It is self-evident from the order that the juvenile court found, as it would have if it had complied with the statutorily mandated worksheet, that Blake's 1998 gross income was $2.8 million, and that application of the "10% rule," identified in the schedule, would have resulted in an entry of $280,000 in annual child support. See R.C. 3113.215.
Moreover, the juvenile court did document its conclusion, called for on line 16 of the worksheet, that there was no relative income to compute, as Blake was providing 100% of the income available for computation of the support amount.
For purposes of the first two assignments of error, the rationale for using and including the worksheet in the record — affording meaningful appellate review and guiding the trial court to consider the correct factors in setting child-support obligations has been fulfilled. The juvenile court's failure to follow the statute has not affected the Carrs' substantial rights. Any remand to the juvenile court with instructions to memorialize in a worksheet that which the court has already considered would be an exercise in futility. Inevitably, the result would be the same. The Carrs would derive no benefit, and judicial resources would be wasted. See Seni v. Seni, supra. The error, therefore, is harmless, and the first and second assignments of error are overruled.
 The Juvenile Court's Deviation from the Guideline Amount
In two interrelated assignments of error, the Carrs contend that the juvenile court erred by ordering a "downward deviation of $220,000" from Blake's child-support obligation and by failing to make the findings that would justify the deviation. The Carrs contend that the juvenile court's failure to apply the "10% rule" and order support in the amount of $280,000, as opposed to $60,000, per year was done without justification and has cost Mirakle $220,000 per year.
While decisions regarding child support ordinarily lie within the discretion of the trial court, see Pauly v. Pauly (1997), 80 Ohio St.3d 386,390, 686 N.E.2d 1108, 1111, any court-ordered deviation from the guideline amount must be supported by findings of fact and must be journalized. See Marker v. Grimm at paragraph three of the syllabus; see, also, DePalmo v. DePalmo (1997), 78 Ohio St.3d 535,539, 679 N.E.2d 266, 269; Rock v. Cabral (1993), 67 Ohio St.3d 108,110, 616 N.E.2d 218, 221.
Deviation from the basic child-support schedule is permitted under those circumstances in which adherence to the schedule amount "would be unjust or inappropriate and would not be in the best interest of the child." R.C. 3113.215(B)(3). In making that determination, the court may consider the factors listed in the subsection and "any other relevant factor." R.C.3113.215(B)(3)(p).
R.C. 3113.215(B)(2)(b) is the statutory subsection that applies if the combined income of the parents is greater than $150,000. InFrazier v. Daniels (1997), 118 Ohio App.3d 425, 429,693 N.E.2d 289, 291-292, this court held that, in setting support under this subsection,
[T]he court shall (1) determine the amount of the obligor's child-support obligation on a case-by-case basis, (2) consider the needs and standard of living of the child and the parents, (3) compute a basic combined child-support obligation that is no less than the same percentage of the parents' combined annual income as is shown for $150,000, and (4) order that amount as child support unless the court determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee.
The Carrs' argument that the juvenile court erroneously deviated by some $220,000 from the statutorily mandated amount of $23,000 per month ($280,000 annually) appears somewhat disingenuous. The Carrs presented, to the juvenile court, a monthly budget of expenses representing that only $15,945 per month was needed to support Mirakle. In their written closing argument, the Carrs reduced this amount to a $9,000-per-month request — a $172,000 "downward deviation."
In finding that annual child support in the amount of $280,000 would be unjust and inappropriate, the juvenile court concluded, on pages four and five of its order, that an order for the statutorily mandated amount of support was not in Mirakle's best interest. The court reviewed the Carrs' "wish-list" budget and found that the lesser amount would provide Mirakle with "a comfortable and nurturing environment." The court observed that expert testimony had indicated that a parent with income similar to Blake's would spend approximately $27,800 per year to support one child, further noting that the Department of Agriculture had indicated that per-child spending to support one child of Mirakle's age would not exceed $12,000 per year. The court ordered an amount for child support that was more than twice what Blake's expert recommended.
Finding that Blake and Lakesha Carr had never established a "lifestyle together," the juvenile court specifically rejected any need to maintain Mirakle in a manner equivalent to that for the children from Blake's marriage. See R.C. 3113.215(B)(3)(1). The juvenile court expressed its concern for Mirakle's future financial security in light of Blake's uncertain future income, and to the extent permitted by law, the court provided that $500 per month of the support was to be deposited into a savings account for the benefit of Mirakle alone. The court also forcefully stated the following:
[T]his Court has carefully weighed the lifestyle currently being enjoyed by both Mother and Father and has concluded that the child can well be provided for at [the ordered] support level. In the event Father's income as a professional athlete is reduced as can be expected in the future, the Court will be looking to the investment income currently being established from testimony regarding his business interests and not to the mere fact that he is no longer an active player in the NFL. The Court will also be concerned with Mother's initiative to provide her share of the child's support through gainful employment.
This Court shall retain jurisdiction of any concerning issues.
Abuse of discretion implies not merely an error of judgment, but a result that is so palpably and grossly violative of fact and logic that it evinces a perversity of will, passion, prejudice, partiality, or moral delinquency. See Nakoff v. Fairview Gen.Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3. To abuse its discretion, a court must act unreasonably, arbitrarily, or unconscionably. See Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83,87, 482 N.E.2d 1248, 1252. If, however, a court's exercise of its discretion exhibits a sound reasoning process that would support its decision, this court will not disturb that determination. See AAAA Enterprises, Inc. v. River PlaceCommunity Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157,161, 553 N.E.2d 597, 601.
Here, the juvenile court, in full compliance with the statute and with this court's analysis in Frazier v. Daniels, has determined the amount of Blake's child-support obligation on the facts presented in this record, has considered the needs and standard of living of child and parents, has computed the basic combined child-support obligation, which is no less than the same percentage of the parents' combined annual income that applies to combined income of $150,000, and has determined that such obligation would be unjust or inappropriate and would not be in best interest of child. Given the high standard to demonstrate an abuse of discretion, we conclude that the court did not err in ordering a downward deviation in Blake's child-support obligation. The third and fourth assignments of error are overruled.
 LAST NAME AND FEES ASSIGNMENTS
In light of the juvenile court's determination that Blake and Lakesha Carr had never established a "lifestyle together," and in the absence of argument by the Carrs as to how it would be in Mirakle's best interest, we further conclude that the juvenile court did not abuse its discretion by refusing to change Mirakle's last name to Blake. See, e.g., In re Willhite (1999), 85 Ohio St.3d 28,706 N.E.2d 778. The fifth assignment of error is overruled.
In their sixth assignment of error, the Carrs claim the juvenile court erred in concluding that it was without authority to award attorney fees and costs.
R.C. 3113.219(B) provides that the court "may include in the [child-]support order a statement ordering either party to pay the costs of the action, including, but not limited to, attorney's fees." An award of attorney fees is a matter within the sound discretion of the trial court, and a decision not to award fees will not be reversed on appeal absent an abuse of discretion. SeeNye v. Dimon (June 18, 1998), Franklin App. No. 97APF09-1220, unreported; see, also, Bucher v. Bucher (June 24, 1998), Crawford App. No. 3-98-2, unreported. Thus, as long as the juvenile court's decision is supported by a sound reasoning process, this court will not disturb that determination. See AAAA Enterprises,Inc. v. River Place Community Urban Redevelopment Corp.
The juvenile court found, on page seven of its order, that the Carrs "had the legal guarantee of counsel through the Child Support Enforcement Agency or could have petitioned the Court to appoint counsel pursuant to Juvenile Rule 4," but that they chose to retain counsel nonetheless. Noting that the Carrs had ample funds available to pay their counsel, the court denied fees. We cannot say that the juvenile court abused its discretion in making this ruling. The sixth assignment of error is overruled.
Therefore, the judgment appealed from is affirmed.
Judgment affirmed.
 HILDEBRANDT, P.J., and SUNDERMANN, J., concur.