WRIGHT ET AL., APPELLANTS, *v.* OLIVER, APPELLEE.

[Cite as Wright *v.* Oliver (1988), 35 Ohio St. 3d 10.]

(No. 87-298—Decided January 6, 1988.)

*Richard J. Schneider* and *Patrick J. Conway,* for appellants.

*Charles S. Kamine,* for appellee.

WRIGHT, J. The issue presented in this cause is whether the equitable doctrine of laches is available to prevent the prosecution of a parentage action brought within the statute of limitations. We hold that laches may be available as a defense in a parentage action if the defendant can show he was materially prejudiced by the delay.

The statute of limitations for commencing a ,parentage action is five years after the child reaches the age of eighteen.[1] R.C. 3111.05. This suit was brought when Andrea was seven years old. Thus, it is undisputed that it was filed well within the statute of limitations. Nevertheless, the lower courts found the action was barred by laches.

Laches is an equitable doctrine. This court has previously ruled that "[i]n order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been *materially* prejudiced by the delay of the person asserting his claim." (Emphasis added.) *Smith* v. *Smith* (1959), 168 Ohio St. 447, 7 O.O. 2d 276, 156 N.E. 2d 113, paragraph three of the syllabus. *Smith's* requirement of "material prejudice"[2] has been followed in *Thirty-Four Corp.* v. *Sixty-Seven Corp.* (1984), 15 Ohio St. 3d 350, 15 OBR 472, 474 N.E. 2d 295, paragraph two of the syllabus; *Connin* v. *Bailey* (1984), 15 Ohio St. 3d 34, 35-37, 15 OBR 134, 135-136, 472 N.E. 2d 328, 329-330; and in *Kinney* v. *Mathias* (1984), 10 Ohio St. 3d 72, 74, 10 OBR 361, 362, 461 N.E. 2d 901, 903.

In support of his claim of material prejudice, Oliver submits that three of

---

[1] There is no question regarding the constitutionality of this statute. The R.C. 3111.05 limitations period avoids the equal protection infirmities of shorter limitations periods, which the United States Supreme Court declared unconstitutional in *Mills* v. *Habluetzel* (1982), 456 U.S. 91, and *Pickett* v. *Brown* (1983), 462 U.S. 1. It also recognizes a child's right to paternal support throughout his or her minority and protects the state's interest in enforcing a father's duty to support illegitimate as well as legitimate children. See *Johnson* v. *Nor-man* (1981), 66 Ohio St. 2d 186, 20 O.O. 3d 196, 421 N.E. 2d 124; *Franklin* v. *Julian* (1972), 30 Ohio St. 2d 228, 59 O.O. 2d 264, 283 N.E. 2d 813.

[2] Other jurisdictions have imposed a finding of prejudice as opposed to material prejudice. See, *e.g., Finucane* v. *Hayden* (1963), 86 Idaho 199, 384 P. 2d 236; *Baker* v. *Benedict* (1978), 92 N.M. 283, 587 P. 2d 430. We decline the invitation to overrule Ohio's long-standing precedent that requires material prejudice.

his witnesses are now unavailable. His neighbor, Mylian Hodges, during 1977-1978, who presumably would have testified concerning Oliver's relationship with Wright, died in 1984. Peggy Hazely, who presumably would have testified that Wright established a marital relationship with George Sims before Andrea's birth, could not be located. George Sims, who would have been questioned about his relationship with Wright, also could not be located. Oliver also claims he has been materially prejudiced by the delay because, after the dismissal of the first case, he incurred obligations he would not have undertaken if he had been held responsible for Andrea's support in that earlier case.

While the unavailability of witnesses could possibly result in some prejudice to Oliver, he has not been *materially* prejudiced. The unavailable witnesses could probably comment on their observations with respect to Leatha Wright's and Oliver's relationship, but they obviously could not conclusively state that Wright and Oliver did not engage in sexual intercourse during the probable time of Andrea's conception absent twenty-four-hour-a-day contact. Furthermore, Oliver cannot claim his case has been so materially prejudiced by the passage of time as to require dismissal of the action on the basis of laches when he has available to

him highly reliable, accurate and accepted scientific tests that can exclude practically all men wrongfully accused of being the father of the child. Oliver's interim expenditures and family obligations have no relevancy on the question whether he is the biological father of Andrea.

Oliver argues that individual genetic tests,[3] such as the human leucocyte antigen test (hereinafter "HLA test"), vary in probabilities of certainty. The question before us, however, is not whether the HLA test is a model of perfection, but rather whether Oliver was materially prejudiced by Wright's four-year delay in refiling this action. Nevertheless, this court recognizes that genetic testing can be superior evidence to witness testimony in parentage cases. As the United States Supreme Court has stated, recent advances in genetic testing " 'dramatically reduc[e] the possibility that a defendant will be falsely accused of being the illegitimate child's father.' " (Citations omitted.) *Pickett* v. *Brown* (1983), 462 U.S. 1, 17.

For the foregoing reasons, we hold laches may be applicable in parentage actions filed prior to the expiration of the statute of limitations, but only if the defendant can show material prejudice. The unavailability of witnesses and incurrence of obligations do not materially prejudice the defendant on

---

[3] Genetic tests, as defined in R.C. 3111.09(E), are serological tests which include, but are not limited to, tests for the presence or absence of the common blood group antigens, the red blood cell antigens, human lymphocyte antigens, serum enzymes, and serum proteins. The key to determining the parent-child relationship rests primarily in the analysis and comparison of the alleged parent's and child's antigens. For a detailed description of the HLA test, see Banks-Baldwin, Ohio Domestic Relations Law (1987), Chapter 5 at T5.03. See, also, *Owens* v. *Bell* (1983), 6 Ohio St. 3d 46, 6 OBR 65, 451 N.E. 2d 241; Joint AMA-ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage (1976), 10 Fam. L.Q. 247; Armitage & Cross, Paternity Testing in a Judicial Setting (1983), 39 J. Mo. Bar 477; Herzog, The HLA Test: New Method for Resolving Disputed Paternity Cases (1983), 55 N.Y. St. Bar J. 34.

the facts of this case.[4] Accordingly, the judgment of the court of appeals is hereby reversed and the cause is remanded to the trial court for further proceedings.

*Judgment reversed and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and H. BROWN, JJ., concur.

---

[4] Our decision today is consistent with those reached by courts in other states. See, *e.g.,* *Williams County Social Services Bd.* v. *Falcon* (N.D. 1985), 367 N.W. 2d 170, 175, where the court declined to apply laches in a parentage case and noted: "[O]ur research has not revealed a case, nor has any been called to our attention, in which an alleged father has successfully raised laches as a defense to a paternity action. Our research has revealed several cases in which an alleged father did not prevail on a claim of laches in a paternity action." (Citations omitted.) See, also, *M.A.D.* v. *P.R.* (Minn. 1979), 277 N.W. 2d 27; *Nettles* v. *Beckley* (1982), 32 Wash. App. 606, 648 P. 2d 508.