FIFTH THIRD BANK *v.* WEST.

(No. 87 CV 34506—Decided September 13, 1988.)

Hamilton County Municipal Court.

*Jack A. Jennewein,* for plaintiff.
*Saul A. Fettner,* for defendant.

MARK P. PAINTER, J. This case was tried to the court on scant evidence. The testimony was adduced from two witnesses only: the present recovery manager for plaintiff Fifth Third Bank and the defendant. No other witnesses were produced.

I Facts

On August 25, 1976, the defendant, David C. West, purchased a 1973 Vega from Superior Chevrolet in Cincinnati. The purchase price of the Vega was $1,457.78 including sales tax, less a $200 down payment made by defendant at the time of purchase. As was its custom, Superior Chevrolet assisted defendant in financing the balance of the purchase price of the Vega through a loan with the plaintiff, Fifth Third Bank. The defendant completed the required paperwork at the dealership and obtained title to the Vega subject to plaintiff's lien for the loan amount of $1,552, which was the total of payments to be made, including interest.

The defendant testified to the following series of events and his testimony was unrebutted. The defendant took possession of the Vega on the purchase date and, almost immediately thereafter, the Vega demonstrated signs of mechanical trouble. Three days after the sale, the car stopped running. The defendant towed the car to Superior Chevrolet, which made carburetor repairs. A week or more later the car stopped

running again, and again the car was towed to Superior. This time, the problem was diagnosed by Superior Chevrolet as a cracked engine block and Superior made appropriate repairs. During this time, the Vega was covered by Superior Chevrolet's ninety-day warranty, which included a no-cost towing feature. Defendant was promised on both occasions that he would be reimbursed for towing, but he never received reimbursement.

Two weeks after this second repair, defendant's Vega again refused to start. According to the defendant's testimony, another phone call to Superior Chevrolet prompted a response that the car dealer had put a new engine in the car, that it should start, that defendant was too much trouble and that the dealership had no intention of dealing with defendant any further. The defendant replied that he was not going to pay for the car.

The defendant then turned to plaintiff bank for assistance, and was referred by an unidentifiable female bank employee to her boss (who is now also unidentifiable by plaintiff). The bank official informed defendant that he could not help in the matter, to which the defendant announced his intention not to make further payments on the car, informing the bank official where the immobile Vega was located. The defendant placed the keys in the ashtray, and walked away from the 1973 Vega, hearing nothing further on the matter for over ten years, when this lawsuit was instituted. Superior Chevrolet has not been joined as a party.

Plaintiff bank's recovery manager was able to testify only from business records, since he did not become employed by the bank until ten years after the transaction in question.

According to plaintiff's records from 1976, no notation of defendant's phone calls exists. The plaintiff's records did indicate, however, that as of April 1977, loan payments totalling $323.50 were made by defendant, although defendant claims he made only one installment loan payment. The bank claims that the amount now due, including interest, is $2,163.57.

The loan account was charged off on September 22, 1977, having been past due for five months with $1,229.30 outstanding on the debt. In April 1978, the account was turned over to a credit agency.

According to bank records, numerous unsuccessful attempts were made to contact the defendant. Notations on the records indicate that defendant's ex-wife, former employers and a cousin were contacted, but none of the contacts knew of defendant's whereabouts. The record also indicates that, for some inexplicable reason, defendant was probably never contacted at his residence, although the bank knew his address. The defendant also testified that he has lived in Hamilton County continuously since April 1977. The bank records were sketchy at best, and no one was able to testify personally as to any of the bank's actions.

## II Law

The equitable doctrine of laches may be used as a defense against an adverse party who seeks to enforce a claim after an unreasonable delay, and after such delay has materially prejudiced the defending party. *Smith* v. *Smith* (1959), 168 Ohio St. 447, 455, 7 O.O. 2d 276, 280-281, 156 N.E. 2d 113, 119.

"Delay in asserting a right does not of itself constitute laches," and in order to successfully invoke the equitable doctrine, material prejudice must be shown. *Id.* at paragraph three of the syllabus. The prejudice necessary in order to invoke the defense of laches may be of two types: "(1) the delay has

resulted in the loss of the evidence which would support the defendant's position; or (2) the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Tobacco Workers Internatl. Union, Local 317* v. *Lorillard Corp.* (C.A. 4, 1971), 448 F. 2d 949, 958-959.

In the case at hand, defendant must prove not only that plaintiff unreasonably delayed in asserting its claim on the delinquency of defendant's loan, but also that such unreasonable delay materially prejudiced defendant to the point that equity requires that plaintiff be barred from asserting its claim.

In *Blake* v. *Columbus* (S.D. Ohio 1984), 605 F. Supp. 567, 571, the court stated that the defendant had not met its burden of showing that plaintiff's delay caused prejudice to defendant. The defendant argued that plaintiff's unreasonable delay in asserting its claim resulted in the loss of evidence. The loss of evidence was the supposed unavailability of defense witnesses — although the plaintiff proved two such witnesses were still in the employ of the defendant.

Of course, plaintiff had fifteen years in which to file its claim for breach of a written contract. R.C. 2305.06. However, laches may apply even though the applicable statute of limitations has not expired, upon a showing of material prejudice. *Wright* v. *Oliver* (1988), 35 Ohio St. 3d 10, 517 N.E. 2d 883. The equitable doctrine of laches may still operate as a bar to the enforcement of a claim even though the delay in enforcing the claim is less than the statutory period, upon a clear showing of special circumstances. *Thirty-Four Corp.* v. *Sixty-Seven Corp.* (1984), 15 Ohio St. 3d 350, 15 OBR 472, 474 N.E. 2d 295, paragraph one of the syllabus. In both of these cases, the court held that the defendants failed to meet the burden of proof of material prejudice. In the *Wright* case, due to the availability of modern scientific methods to determine paternity, the court found that the absence of witnesses was not sufficient prejudice to bar a paternity action.

There is no scientific evidence in this case, however, and the court's focus must be upon the unreasonableness of plaintiff's delay and any material prejudice to the defendant as a result of that delay.

It is a fact that plaintiff bank waited over ten years to assert its claim on a loan that fell into default after the first installment payment was made. The "unreasonableness" of this delay is supported by plaintiff's lack of substantial effort to locate defendant. Plaintiff's recovery manager, at the time, contacted three of defendant's acquaintances, but failed to try to notify defendant at his home residence. The defendant testified further that he has continuously lived in Hamilton County since April 1977. This court holds that a ten-year delay is, in these circumstances, unreasonable.

The plaintiff bank's ten-year delay in asserting its loan default claim against defendant has materially prejudiced him. The delay has resulted in the loss of evidence which would support defendant's position. *Tobacco Workers Internatl. Union, supra,* at 958.

The ten-year delay by plaintiff has affected defendant's ability to contact or locate witnesses who worked for plaintiff or Superior Chevrolet during the time of the loan transaction. Even defendant testified that his own memory on the exact happenings and people involved in the car purchase and financing was now somewhat vague. Such evidence and witnesses are essen-

tial to defendant's defense of plaintiff's claim and, therefore, defendant's loss of such evidence is a material prejudice to his position. The automobile itself could be a substantial piece of evidence, but no one seems to know anything about where it might be or what became of it, another example of material prejudice to defendant, who could not have assumed otherwise than that the bank had repossessed it ten years ago.

To hold a defendant accountable for names of former bank and dealership employees, for records on a debt that was due ten years ago, and for the whereabouts of an automobile abandoned and assumed to be repossessed goes against equity.

The defendant has no records of the long-ago transaction, and stated, at one point, when asked about his last payment: "I can't remember. That is you know, like I say, that it's been so many years ago. * * * You know, I don't keep records like the bank does." Interestingly enough, the bank employee testified: "I don't have any type of records on the car itself. I have records, you know, *more or less,* on the loan." (Emphasis added.) The court finds that the records are "less," not more, and surely any absence or loss of records cannot be ascribed to the defendant.

The defense of laches bars plaintiff from asserting its loan-default claim against defendant.

*Judgment for defendant.*