Plaintiff-appellant, Sandy Shockey, gave birth to Jeffrey Shockey on August 6, 1987. Appellant filed a complaint to establish paternity on December 17, 1996 and requested a determination of child support as well as an award of back support from the date of Jeffrey's birth. On August 14, 1997 and October 30, 1997, hear ings were held before a magistrate and defendant-appellee, Charles Blackburn, entered an admission of paternity.
Jeffrey Shockey has severe mental and physical disabilities. He suffers from cerebral palsy, brain damage, and a thyroid condition. He is confined to a wheelchair. Jeffrey has been hospitalized for significant periods of time, has undergone several surgeries and continues to need full-time care. At the time of the hearings, Jeffrey was a ten-year-old who had the intellectual capabilities of an eight-month infant with little prospect of any significant change in his condition.
Appellant has arranged for Jeffrey's care since the time of his birth. Since October of 1987, appellant's mother has provided day care for Jeffrey for which she has been paid $65 per week. Although insurance covers most of the cost of Jeffrey's medical care, appellant testified that as of May 1996 she had accumulated $12,000-$15,000 in unreimbursed medical expenses.
The parties had an amicable relationship from 1987 until 1996 when the relationship deteriorated and appellant filed a complaint with the trial court. Prior to the breakdown in their relationship, Blackburn provided financial support for his son and visited him frequently. At the magistrate's hearing, Blackburn presented copies of checks that he had written to appellant which totaled $40,700, and testified that he could not determine how much cash he had given her through the years. Appellant testified that she had not kept an account of the cash she had received from Blackburn, but estimated an amount of $5,000-$7,500. Blackburn also made other contributions: $4,976 for a chair lift for appellant's van, a down payment of $2,000 and a final payment of $2,934 toward purchase of the van, and $1,250 to retain an attorney to pursue a medical malpractice claim on behalf of his son. Blackburn also loaned appellant $5,200 so that she could pay off credit card debt.
Although Blackburn attempted to give appellant money every month, the parties had no formal agreement concerning child support. Appellant testified that she requested more money from Blackburn on various occasions to meet the expenses of raising Jeffrey. At the time of the hearings before the magistrate, appellant's annual income was $20,500, and Blackburn's annual income was $75,000.
In a decision filed on November 10, 1997, the magistrate ordered Blackburn to pay child support in the amount of $892.67 per month effective December 17, 1996, the day that appellant filed the complaint. Arguing that the effective date should have been Jeffrey's date of birth, appellant objected to the magistrate's decision. In an entry filed on June 30, 1998, the trial court judge affirmed the magistrate's decision. This timely appeal followed. Appellant raises one assignment of error for our review:
 THE MAGISTRATE'S ORDER AND THE TRIAL COURT'S AFFIRMATION OF THE MAGISTRATE'S ORDER WAS AN ABUSE OF DISCRETION IN LIGHT OF OHIO REVISED CODE SECTION 3111.13.
Under her sole assignment of error, appellant argues that the trial court's order constituted an abuse of discretion because it did not follow the guidelines of R.C. 3111.13. According to appellant's calculations using child support worksheets, she received $30,000-$40,000 less over the years than she would have received had she filed a complaint for child support at the time of her son's birth.
A trial court is vested with broad discretion in calculating child support awards; absent an abuse of discretion, the trial court's determination shall be upheld. Dunbar v. Dunbar (1994),68 Ohio St.3d 369, 371. More than a mistake of law or judgment, an abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
The purpose of the paternity statute is to compel the father of the child to share in the costs of childbirth and child support so that the mother will not bear the entire responsibility of support, and the child will not financially burden the state.Seegert v. Zietlow (1994), 95 Ohio App.3d 451, 460, citingJohnson v. Norman (1981), 66 Ohio St.2d 186, paragraph one of the syllabus. Under R.C. 3111.13, a trial court may order a support obligation in a parentage action to be effective on the child's date of birth rather than on the date that the complaint was filed. Beach v. Poole (1996), 111 Ohio App.3d 710, 712; Seegert,95 Ohio App.3d at 459. R.C. 3111.13(F) (3) states the following:
 When a court determines whether to require a parent to pay an amount for that parent's failure to support a child prior to the date the court issues an order requiring that parent to pay an amount for the current support of that child, it shall consider all relevant factors, including, but not limited to, any monetary contribution either parent of the child made to the support of the child prior to the court issuing the order requiring the parent to pay an amount for the current support of the child. (Emphasis added.)
 Baugh v. Carver (1981), 3 Ohio App.3d 139, paragraph one of the syllabus, held the following:
 Where damages for support payments for the period from the date of the child's birth to the date of adjudication are prayed for and proved, it is an abuse of discretion for the court to make no award of child support for that period in the absence of an affirmative demonstration of some circumstance which ought reasonably to relieve the father of this obligation and the child of this entitlement. (Emphasis added.)
Baugh requires that the party asking for court ordered support from the date of birth prove damages for support. Baugh at paragraph one of the syllabus; Haudenschield v. Brakora (July 20, 1993), Montgomery App. No. 13749, unreported. Although Baugh was decided under a version of R.C. 3111.13 that has subsequently been revised, it is still cited by this court and other Ohio courts considering child support orders under the current R.C. 3111.13. See Myers v. Moschella (1996), 112 Ohio App.3d 75; Magee v. Duwarn
(Sept. 16, 1998), Summit App. No. 18896, unreported; Powers v.Eurez (Mar. 5, 1998), Franklin App. No. 97APF08-1103, unreported;Bahring v. Mercer (Aug. 19, 1996), Clermont App. No. CA96-02-023, unreported.
In the case sub judice, the magistrate found that Blackburn should not be responsible for child support prior to the date of the complaint. The magistrate determined that prior to the complaint "the parties clearly were communicating on the child's needs," and "were making arrangements to financially meet those needs." The magistrate found that Blackburn had met his burden under Baugh to show that support should not be retroactive to his son's date of birth.
The magistrate's conclusions, as affirmed by the trial court judge, are supported by credible, competent evidence. Blackburn made significant financial contributions toward the care of his son during the previous nine years. Blackburn paid appellant over $40,000 in checks and at least $5,000 in cash. He has helped attend to his handicapped son's special needs by purchasing a chair lift and assisting in the purchase of a van. Blackburn also paid a retainer to pursue a medical malpractice claim on behalf of his son. Although appellant emphasizes the fact that they had no for malagreement and claims that she requested more money from Black burn, there is evidence that a relationship existed between the parties for nine and one-half years by which Blackburn made a good faith effort to meet Jeffrey's financial needs. Finally, the fact that appellant did not file a complaint against Blackburn until the relationship between the two parties ended supports the conclusion that appellant was able to meet the needs of her son until 1996. All of these facts are relevant factors that the trial court properly considered under R.C. 3111.13(F) (3).
Appellant testified as to the cost of Jeffrey's care. Appellant stated that the cost of care for her son was $65 per week. Factoring this amount as a weekly expense over the period of nine and one-half years, her child care costs would be approximately $32,110. Appellant testified that she purchased a $20,000 van necessary for her son's transportation. (Blackburn paid $4,934 toward this van purchase.) Finally, appellant testified that she had accumulated $12,000-$15,000 in uninsured medical costs. Appellant's costs, as prayed for and proved, totaled $59,176-$62,176. Blackburn's payments to appellant by cash and check were approximately $45,700-$48,200. Blackburn also paid $4,976 for the chair lift and $1,250 to fund a lawsuit on his son's behalf. Blackburn's total contribution was approximately $56,860-$59,360.
Considering the substantial contributions that Blackburn has already made to his son's care, we cannot find that the trial court abused its discretion by finding that there were circumstances which ought to reasonably relieve him of his obligation to pay child support prior to the date the complaint was filed. See Baugh, 3 Ohio App.3d at 141. In so finding, we emphasize the fact that this is an unusual case where a good faith relationship existed between appellant and Blackburn before the complaint was filed such that Jeffrey's financial needs were apparently met. Moreover, we note that Jeffrey's mental and physical problems so severely hinder his personal development that there is reason to expect that Blackburn's support obligation may last well beyond the time that Jeffrey reaches the age of majority.
Appellant also claims that the trial court improperly applied the doctrine of laches to bar her claim for back support. The doctrine of laches is an available defense in a parentage action if a defendant demonstrates that he was materially prejudiced by plaintiff's delay. Wright v. Oliver (1988), 35 Ohio St.3d 10, syllabus. What constitutes material prejudice is primarily a question of fact to be resolved through a consideration of the special circumstances of each case. Bitonte v. Tiffin SavingsBank (1989), 65 Ohio App.3d 734, 739. An appellate court will not reverse the decision of a trial court regarding the application of the doctrine of laches unless there is a showing of an abuse of discretion. Payne v. Cartee (1996), 111 Ohio App.3d 580, 590.
It is not clear that the trial court applied the doctrine of laches when deciding when to begin Blackburn's court-ordered support obligation. Nowhere in the magistrate's detailed decision is this doctrine mentioned; rather, it appears that the magistrate's decision was based upon the holding in Baugh. Assuming for the sake of argument that the trial court applied the doctrine of laches to bar plaintiff's claim, there was competent, credible evidence to support such a decision.
There was evidence to support the conclusion that appellant's nine year delay in filing a parentage complaint was unreasonable, and that Blackburn was materially prejudiced by this delay. Black burn believed that he was doing his part to contribute to the support of his son. The evidence showed that Blackburn contributed large sums of money toward his son's support. As the magistrate noted, appellant only found it necessary to file a complaint once the relationship between the parties had deteriorated. Thus, it appears that up until the time that the complaint was filed, Jeffrey's needs were met. Because Blackburn would be materially prejudiced by an order for ten years of retroactive support, an application of the doctrine of laches would not constitute an abuse of discretion.
Finally, appellant argues that the trial court incorrectly deemed Blackburn's in-kind contributions as support. R.C. 3113.215(3) provides that a court may deviate from the amount of support that would otherwise be calculated by considering the factors enumerated therein, including in-kind contributions in R.C. 3113.215 (3) (j). Here, Blackburn's in-kind contributions included money paid toward a van necessary for Jeffrey's transportation and a retainer for a medical malpractice law suit on Jeffrey's behalf. Because the child support obligation that Blackburn was ordered to pay was identical to the amount on the child support worksheet, it is clear that the trial court did not reduce Blackburn's monthly obligation amount as a result of in-kind contributions. However, the trial court explicitly stated that it did consider these in- kind contributions when calculating how much child support Black burn had paid throughout the years. We can find no case law or statute that prohibits consideration of in-kind contributions as a "relevant factor" under R.C.3111.13(F) (3) when determining the effective date of a child support obligation. Therefore, the trial court's action did not constitute an abuse of discretion.
Based upon the reasoning above, appellant's assignment of error is overruled.
Judgment affirmed.
WALSH and VALEN, JJ., concur.