**PIER**

v.

**GILBERT.** ▮

2002-Ohio-7484.]

Court of Common Pleas of Ohio,
Putnam County, Juvenile Division.

No. 20014005.

Decided Nov. 25, 2002.

Arthur, O'Neill, Mertz & Bates Co., L.P.A., and Dan Michel, for plaintiff.

David Hyman, for defendant.

---

THOMAS A. UNVERFERTH, Judge.

{¶ 1} The parties in this matter have resolved all but two issues between themselves, and an entry has been sent to the court reflecting that agreement. A subsidiary point controverted in it is to be resolved having to do with the calculation of child support. The parentage of plaintiff had earlier been established as part of the pleadings.

{¶ 2} The issues remaining are a dispute as to whether Patty R. Gilbert (hereinafter "mother" or "defendant") is entitled to retroactive child support (presumably from the date of birth of her child Derek L. Gilbert) (hereinafter "Derek" or the "juvenile" or the "child") from Rusty Pier (hereinafter the "father" or the "plaintiff") and second, which of the two is entitled to the yearly tax exemption relating to the child. Derek was born August 27, 1990.

{¶ 3} An administrative filing for parentage at the Putnam County Child Support Enforcement Agency ("PCCSEA" or "agency") by defendant occurred October 12, 2000. Plaintiff filed an action for parentage on February 20, 2001, and defendant counterclaimed for support on March 12, 2001, in the amount of $47,517.19 from the date of the child's birth. The plaintiff has agreed to prospective support, that is, support from June 1, 2002, only.

### Retroactive Support

{¶ 4} Retroactive support involves the application of a statute, R.C. 3111.13(F)(4)(a), effective October 27, 2000, which reads:

"A court shall not require a parent to pay an amount for that parent's failure to support a child prior to the date the court issues an order requiring that parent to pay an amount for the current support of that child or to pay all or any part of the reasonable expenses of the mother's pregnancy and confinement, if both of the following apply:

"(i) At the time of the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the child was over three years of age.

"(ii) Prior to the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the alleged father had no knowledge and had no reason to have knowledge of his alleged paternity of the child."

{¶ 5} Here the administrative filing with the PCCSEA occurred only on October 12, 2000, i.e., prior to October 27, 2000. Even assuming that such administrative filing qualifies under the definition of "filing," the court believes that such definition does not mean that the statute cannot be retroactively applied. Indeed, a little further on, R.C. 3111.13(F)(4)(c) states:

"(c) A party is entitled to obtain modification of an existing order for arrearages under this division regardless of whether the judgment, court order, or administrative support order from which relief is sought was issued prior to, on, or after the effective date of this amendment."

{¶ 6} Thus, the legislature itself has endorsed retroactivity in this statute.

{¶ 7} In addition, testimony in this case indicated a very high percentage probability of plaintiff's parentage determined in a test done apparently sometime in November 2000. As stated, he subsequently went to court, and defendant counterclaimed for support. Thus, almost all of the time period dealing with the court case falls in the post-statute period.

{¶ 8} In the case at bar, as to subsection (i) of (F)(4)(a), it is not disputed that there was no commencement of an action until years after the three-year period. But for subsection (ii), a closer analysis may be in order. A following subsection, R.C. 3111.13(F)(4)(b), reads as follows:

"(b) For purposes of division (F)(4)(a)(ii) of this section, the mother of the child may establish that the alleged father had or should have had knowledge of the paternity of the child by showing, by a preponderance of the evidence, that she performed a reasonable and documented effort to contact and notify the alleged father of his paternity of the child."

{¶ 9} The above paragraph refers to "(F)(4)" and confusingly was renumbered "(F)(3)" in 2000 S.B. No. 180, effective March 22, 2001, when there is no (F)(4) in the renumbered statute.

{¶ 10} Defendant claims here that plaintiff had or should have had knowledge that he was the father, based on some disputed testimony. There is no doubt that plaintiff knew that defendant had a child. There was testimony, however, that one person (Eric Ludwig) and probably a second, in addition to plaintiff, had sexual relations with the defendant at the time of presumed conception. Defendant asserts that two conversations between herself and plaintiff, one by telephone in 1991, the other in person in 1993, amount to reason to have knowledge. Defendant disputes or does not remember the first conversation. In another conversation in 1991 prior to the first alleged plaintiff-defendant communication, this time between herself and the wife (then fiancée) of Ludwig, she requested that Ludwig take a blood test.

{¶ 11} Except for one in 1993, there were no further conversations by defendant by herself or through a relative with plaintiff or Ludwig, until 2000. As a result, plaintiff thought that he was not the father, and apparently defendant also did not, or preferred not to think so. Ludwig was approached again in 2000 through defendant's cousin Callie, prior to contacting plaintiff. Even assuming that defendant's is the correct version, the court does not think that these incidents taken together amount to knowledge or that this situation means that plaintiff had reason to have knowledge. Defendant has it that there may be other ways of satisfying this part of the statute, for instance, that intercourse amounts to knowledge or reason to have knowledge, but for this extreme position offers no citations. We remember that the mother herself lacked this knowledge.

{¶ 12} The court now turns to the defendant's allegation, as to R.C. 3111.13, as set forth above, that it is unconstitutional under Section 28, Article II of the Ohio Constitution, which prohibits retroactive laws.

{¶ 13} But according to *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 446 N.E.2d 449, "It is axiomatic that all legislative enactments enjoy a presumption of constitutionality." *Dorso* also stands for the proposition that presumptions and rules of construction must be applied if possible to affirm constitutionality. *Dorso*, supra, 4 Ohio St.3d at 61, 4 OBR 150, 446 N.E.2d 449. Courts are to avoid such finding if other avenues exist. *State ex rel. Haylett v. Ohio Bur. of Workers' Comp.* (1999), 87 Ohio St.3d 325, 720 N.E.2d 901.

{¶ 14} The Ohio Supreme Court has further said, "Statutes are presumed to be constitutional unless shown beyond a reasonable doubt to violate a constitutional provision," and "[t]he legislature is the primary judge of the needs of public welfare, and this court will not nullify the decision of the legislature except in the case of a clear violation of a state or federal constitutional provision." *Beagle v. Walden* (1997), 78 Ohio St.3d 59, 61, 676 N.E.2d 506.

{¶ 15} A search of Ohio cases by the court reveals that Ohio courts have never found the retroactivity statutes unconstitutional. For many years, retroactivity has survived as a doctrine without contest under this and prior statutes. The court has had discretion on the retroactivity issue by virtue of R.C. 3111.13(F)(3), effective January 15, 1992, and prior to that date it had a similar discretion under case law. See *Baugh v. Carver* (1981), 3 Ohio App.3d 139, 3 OBR 157, 444 N.E.2d 58. The distinction of remedial versus substantive law is not much addressed in the retroactive cases; courts have made retroactivity rulings for many years, without constitutionality challenges, probably because all this time trial courts have had such discretion. This court does not see constitutionality, therefore, as an issue.

{¶ 16} Counsel cites statements in a *Donovan* case challenging the statute's constitutionality; these are among a very few even bearing on this question and there they were clearly dicta. See *State ex rel. Donovan v. Zajac* (Sept. 28, 2001), Geauga App. No. 2001–G–2331, 2001 WL 1149985.

{¶ 17} The salient point in this aspect of the case is that clearly defendant failed to satisfy the statutory requirement of reasonable notice within the three-year period as required by R.C. 3111.13(F)(3)(a) or (F)(4)(a). The notice requirement of reasonable and documented effort has also not been met by defendant. Ohio may recognize a presumption in favor of retroactivity, see *Baugh v. Carver*, supra, but if so, the court finds that the presumption here is overcome.

{¶ 18} Plaintiff next asserts that laches bars defendant's claim. Again the court notes that the agency action was initiated only on October 12, 2000, with the PCCSEA, followed by the counterclaim of March 12, 2001. Though having relations with two and probably three men, still in October 2000 as to the actual identity of the father, defendant was not sure.

{¶ 19} Several lines of important testimony are now taken up. When in the latter part of 2000, defendant's cousin asked Eric Ludwig, as a potential father, voluntarily to take a parentage test, we remember defendant through Eric's wife had asked him to do something similar in February 1991. Her preference still was for Ludwig as a father. The more credible testimony suggests that the defendant named Derek after, or in honor of, one man, Eric Ludwig, preferring him in 2000, just as she had earlier first gone to him. She testified that she had told no one of the source of the name Eric, but Sandi Ludwig, a more reliable witness, contradicted this. She even may have named one of her child's middle names "Lee" after Lee Bradford, one of the three men mentioned above, but denied this again.

{¶ 20} At another point, she further admitted that she did not know or care about the identity of the real father.

{¶ 21} Less credible testimony and more difficult exchanges to resolve are the disputed direct conversations between plaintiff and defendant in 1993 at plaintiff's house as to whether mention was made to plaintiff of plaintiff's parentage. In any case, there was no pursuit of the matter.

{¶ 22} Plaintiff, though he knew defendant had a child and remembered a sexual encounter with her, had little or no reason to think that he was the father. The court stresses that defendant as well did not know or think so.

{¶ 23} In the claim by plaintiff of laches against the defendant, the law in Ohio appears to have developed along narrow lines. *Wright v. Oliver* (1988), 35 Ohio St.3d 10, 517 N.E.2d 883, finds laches applicable in retroactive support parentage cases. *State ex rel. Mallory v. Pub. Emp. Retirement Bd.* (1998), 82 Ohio St.3d 235, 244, 694 N.E.2d 1356, elaborates on *Wright*. *Mallory* states as a first requirement, one of unreasonable delay in asserting a right; delay obviously occurred here over a period of ten years. The second requirement, lack of an excuse, is met by absence in the testimony of any showing of reasons for the waiting. The third element of knowledge of the "injury or wrong" is met of course by the defendant's knowledge coupled with concealment from plaintiff of his potential parentage. Defendant know, with respect to the plaintiff, that he was a potential father as well as one or probably two others. Since there could be only one, and that one not Ludwig, but plaintiff, there was a large wrong to the latter by defendant in delaying, and not naming him, but allowing him to think that he was not the father. He was continually nearby; it was not a question of not knowing his whereabouts.

{¶ 24} But as to the fourth requirement, material prejudice, we must look a little more closely. First, plaintiff did marry in 1996, had a child of his own, and adopted another (a child of his wife's), during the period of delay. Marriage to another would not in this case, and not generally, be considered a detriment. See *Myers v. Myers*, 147 Ohio App.3d 85, 2002-Ohio-405, 768 N.E.2d 1201 (a divorce case).

{¶ 25} Also, it does not appear that he suffered a financial loss by marrying, although defendant seems to have had a good job during the nine- or ten-year period. But he suffered the loss of love and companionship of his child during all that time, and this many would consider far more important than monetary considerations.

{¶ 26} The court must consider the best interest of the child. Derek does not by the testimony appear to have been neglected, penalized, or harmed any more than any other fatherless child. He does not appear to have undergone any privation. His mother states now that he desires to know his father; the court notes the perhaps significant coincidence that this need was voiced approximately or only at the time of the mother's application for benefits.

{¶ 27} To add to defendant's doubtful credibility on knowledge and communication to plaintiff (see the prior argument on retroactivity), the court notes that defendant's attitude in not caring for so long who was the father. Also, her protracted refusal to communicate with him, her preference for another, and deprivation of contact between father and child with lack of input by him (or even her not wanting him to take part) in Derek's upbringing are all telling. He now agrees to pay a substantial prospective award of support.

{¶ 28} In sum then, this lack of concern, her satisfaction with her situation, and her delay, coupled with an absence of need, mean that it would be unfair to require him to pay support for those prior years. It gives her too much of a windfall. The maxim "one who wishes equity must do equity" seems pertinent here.

{¶ 29} In *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 619 N.E.2d 469, although the filing for parentage occurred more than 20 years after the child's birth, the court denied application of retroactivity. The mother had wanted the father to have no part in the child's raising nor had requested support or visitation. The court felt that it would not be just for the mother's actions to prejudice the child's claim for back support and made a distinction between the mother and the child's interest.

{¶ 30} In *Ryan v. Osman* (Nov. 22, 1996), Lake App. No. 95–L–198, 1996 WL 702472, the Lake County Court of Appeals reversed a finding that laches did not apply, although there the father had made substantial payments. The mother knew of the father's whereabouts and had repeated though sporadic contact with him. Her filing 12 years after the child's birth was found unreasonable and unexplained. An award by the lower court of over $100,000, coupled with the father's business bankruptcy and a serious illness, amounted to material prejudice.

{¶ 31} Again, a somewhat similar case is *In re Interest of J.H.* (Tex.App.1997), 961 S.W.2d 550. There, retroactive support was denied except for a few months back to the date of the filing of the father's answer. The Texas lower court was said to have discretion under the Texas statute, where it had considered the net resources of the obligor and four legislatively determined criteria, and its order was upheld because it had reference to guiding rules or principles. The trial court had not abused its discretion. Here the father even had knowledge of parentage.

{¶ 32} This matter at hand is replete with "he said, she said" instances, in a relationship or relationships characterized by secrecy. The parties' behavior has been less than exemplary, particularly when there is a child to be considered.

{¶ 33} Balancing the equities, the court in its discretion finds that retroactive payments are not recoverable because of laches (though material detriment could be more fully made out). In addition, for the same reasons on general equitable considerations, recovery cannot be had. See, generally, *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 34} In summary, on grounds of application of the statute, R.C. 3111.13(F), to defendant's claim, on grounds of laches, and on grounds of general equitable considerations, defendant's claim of retroactive support is denied.

### Income Tax Exemption

{¶ 35} In the other disputed matter in this case, the income tax exemption, the court has in mind the temporary agreement of the parties, which was to alternate this exemption starting with the defendant's claim during the even year of 2000 and the plaintiff's claim allowed during the odd year of 2001. In view of this agreement and of the court's foregoing opinion as to the denial of retroactivity, the court will continue the alternation of the exemption, even though it may result in a somewhat higher tax burden as suggested by plaintiff.

### Judgment Entry

{¶ 36} Pursuant to the court's opinion filed herewith and incorporated by reference, the same as if rewritten herein, the court hereby ORDERS, ADJUDGES, AND DECREES that:

{¶ 37} 1. The claim of the defendant for retroactive support is hereby denied.

{¶ 38} 2. Future tax exemptions are awarded to defendant and plaintiff in alternate years, beginning with the defendant, who is awarded the exemption for the year 2002, the plaintiff being awarded that for 2003, and so on.

{¶ 39} 3. The judgment entry submitted by defendant containing agreements and stipulations of the parties is approved except for portions of paragraph 2 specifying a sum of support per week, which is disputed. Each party shall submit a short memorandum of law setting forth its position with citations on this point within three weeks of the date of this entry.

{¶ 40} 4. Costs of this matter are assessed to plaintiff.

### AMENDED JUDGMENT ENTRY

#### Decided Jan. 13, 2003

{¶ 41} Pursuant to the court's opinion filed with the earlier journal entry, journalized November 25, 2002, which opinion is again incorporated by reference, the same as if rewritten herein, the court finds that it now has had the benefit of

supplemental briefs of the parties on an unresolved issue in that entry, and therefore hereby ORDERS, ADJUDGES, AND DECREES as follows:

{¶ 42} 1. The claim of the defendant for retroactive support is hereby denied.

{¶ 43} 2. Future tax exemptions are awarded to defendant and plaintiff in alternate years, beginning with the defendant, who is awarded the exemption for the year 2002, the plaintiff being awarded that for 2003, and so on.

{¶ 44} 3. The Child Support Computation Worksheet submitted by defendant containing calculations of child support per month is approved, which worksheet specifies an amount of $463.76 plus $9.28 for poundage per month for a total of $473.04 due from the obligor.

{¶ 45} 4. Costs of this matter are assessed to plaintiff.

Judgment accordingly.