DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Richard Caycedo, appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, which ordered him to pay retroactive child support. This Court affirms.
 I. {¶ 2} We recounted in detail the underlying facts of this matter in the first appeal before this Court. See Post v. Caycedo, 9th Dist. No. 21954, 2005-Ohio-161 ("Post I "). We now summarize those facts for convenience.
 {¶ 3} Appellee, Judy Post, gave birth to a baby girl on October 24, 1992. Post believed that the father of the child was Caycedo. In early 1993, Post filed a *Page 2 
motion for child support against Caycedo. No journal entry was ever entered on that motion. On June 4, 2001, Ohio's Child Support Enforcement Agency ("CSEA") filed a motion on Post's behalf to establish a parent/child relationship between Caycedo and Post's daughter. The complaint sought current support for the daughter, past medical expenses, and retroactive support from the date the daughter was born.
 {¶ 4} After a chain of custody dispute over an initial genetic test, a second genetic test was performed. That test established to a reasonable degree of medical certainty that Caycedo was the father of Post's child. Following a hearing before a magistrate, the trial court determined that Caycedo was the child's father, ordered current support, and awarded Post retroactive support. This Court reversed the trial court's judgment because Caycedo was unrepresented by counsel. See id. at ¶ 11-19.
 {¶ 5} Following our remand, Caycedo sought and received a third genetic test, this one performed by an independent company. That test also confirmed that Caycedo was the father of Post's child. The remaining issues were assigned to a visiting judge and an evidentiary hearing took place. At the beginning of that hearing, the trial court summarily denied Caycedo's motion to dismiss based on laches. Both parties then presented evidence. Following the hearing, the trial court found that Caycedo was the father of Post's child. The trial court then ordered current support for the child, awarded Post past medical expenses, and *Page 3 
ordered Caycedo to pay retroactive support. Caycedo timely appealed the trial court's judgment, raising four assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN SUMMARILY OVERRULING APPELLANT'S MOTION TO DISMISS THE COMPLAINT DUE TO LACHES."
 {¶ 6} In his first assignment of error, Caycedo asserts that the trial court erred in failing to hold a hearing on his motion to dismiss. We disagree.
 {¶ 7} Laches is an affirmative defense. Civ.R. 8(C). An affirmative defense is not the proper subject of a motion to dismiss, but must be pleaded and proven by the party asserting the defense. See, e.g.,State ex rel. Freeman v. Morris (1991), 62 Ohio St.3d 107, 109 (finding that the affirmative defense of res judicata is not properly raised in a motion to dismiss). As Caycedo's defense of laches was not the proper subject of a motion to dismiss, we find no error in the trial court's refusal to hold a hearing on the matter. Caycedo's first assignment of error lacks merit.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT DISMISSING THE COMPLAINT DUE TO LACHES."
 {¶ 8} In his second assignment of error, Caycedo argues that the trial court erred when it determined that laches did not bar Post's claim for retroactive support. We disagree. *Page 4 
 {¶ 9} "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." Baughman v. State Farm Mut. Auto. Ins. Co.,160 Ohio App.3d 642, 2005-Ohio-1948, at ¶ 10. To succeed utilizing the doctrine of laches, one must establish: "(1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for such delay; (3) knowledge, actual or constructive, of the injury or wrong[;] and (4) prejudice to the other party." Connolly Constr. Co. v. Yoder, 3d Dist. No. 14-04-39, 2005-Ohio-4624, at ¶ 23, citing State ex rel. Cater v. N.Olmsted (1994), 69 Ohio St.3d 315, 325. Accordingly, "[d]elay in asserting a right does not of itself constitute laches." State ex rel.Scioto Cty. Child Support Enforcement Agency v. Gardner (1996),113 Ohio App.3d 46, 57, quoting Smith v. Smith (1959), 168 Ohio St. 447, at paragraph three of the syllabus. Instead, the proponent must demonstrate that he or she has been materially prejudiced by the unreasonable and unexplained delay of the person asserting the claim. Connin v.Bailey (1984), 15 Ohio St.3d 34, 35-36.
 {¶ 10} Whether or not to apply the defense of laches is within the discretion of the trial court and is not overturned absent an abuse of discretion. Still v. Hayman, 153 Ohio App.3d 487, 2003-Ohio-4113, at ¶ 8. The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion *Page 5 
standard, this court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med Bd, (1993), 66 Ohio St.3d 619, 621.
 {¶ 11} With respect to laches in parentage actions, the Ohio Supreme Court has noted as follows:
 "[L]aches may be applicable in parentage actions filed prior to the expiration of the statute of limitations, but only if the defendant can show material prejudice. The unavailability of witnesses and incurrence of obligations do not materially prejudice the defendant on the facts of this case." Wright v. Oliver (1988), 35 Ohio St.3d 10, 12.
In Wright, the Court noted that while some prejudice may occur as a result of unavailable witnesses, the prejudice must be material to warrant the application of laches. Id.
 "While the unavailability of witnesses could possibly result in some prejudice to Oliver, he has not been materially prejudiced. The unavailable witnesses could probably comment on their observations with respect to Leatha Wright's and Oliver's relationship, but they obviously could not conclusively state that Wright and Oliver did not engage in sexual intercourse during the probable time of Andrea's conception absent twenty-four-hour-a-day contact. Furthermore, Oliver cannot claim his case has been so materially prejudiced by the passage of time as to require dismissal of the action on the basis of laches when he has available to him highly reliable, accurate and accepted scientific tests that can exclude practically all men wrongfully accused of being the father of the child." Id. *Page 6 
 {¶ 12} Like the father in Wright, Caycedo cannot establish material prejudice resulting from Post's alleged delay.[1] Caycedo asserted at trial that witnesses at the hotel in Mexico would have verified his comments about him receiving oral sex from Post. Caycedo also asserts that an accurate record from the hotel would have revealed that he and Post did not share a room, but instead that each had a separate room. None of this alleged evidence supports Caycedo's claim. Assuming for the sake of argument that Caycedo told friends that Post had performed oral sex on him, this does not account for the remainder of their relationship or their time together in Puerto Vallarta. Likewise, assuming that Caycedo could establish that Post had a separate room in Mexico, this would not support a conclusion that the two did not have sexual intercourse. Moreover, like the father in Wright, Caycedo had available to him highly reliable scientific tests which revealed that he was the biological father of Post's child. Consequently, Caycedo failed to demonstrate material prejudice from Post's alleged delay in seeking support.
 {¶ 13} Caycedo's second assignment of error lacks merit.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ISSUING A JUDGMENT FOR RETROACTIVE CHILD SUPPORT WITHOUT COMPLIANCE WITH THE STATUTORY *Page 7 
REQUIREMENTS FOR SUCH AN ORDER CONTAINED IN OHIO REVISED CODE SECTIONS 3111.13(F)(3)(a)(i) AND (ii)."
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 14} As Caycedo's third and fourth assignments of error are interrelated, we will address them together. In his third and fourth assignments of error, Caycedo argues that the trial court's judgment was against the manifest weight of the evidence. Specifically, Caycedo asserts that the evidence weighs heavily in his favor on the issue of whether Post complied with R.C. 3111.13. This Court disagrees.
 {¶ 15} The law is clear that if a civil judgment is supported by some competent, credible evidence going to all of the essential elements of the case, there should not be a reversal by a reviewing court as being against the manifest weight of the evidence. CE. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus. "[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct." State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24. Mere disagreement over the credibility of witnesses or evidence is not sufficient reason to reverse a judgment. Id. *Page 8 
Statutory Argument {¶ 16} Caycedo first argues that R.C. 3111.13(F)(3)(a) bars Post's claim for retroactive support. R.C. 3111.13(F)(3)(a)[2] provides as follows:
 "A court shall not require a parent to pay an amount for that parent's failure to support a child prior to the date the court issues an order requiring that parent to pay an amount for the current support of that child or to pay all or any part of the reasonable expenses of the mother's pregnancy and confinement, if both of the following apply:
 "(i) At the time of the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the child was over three years of age.
 "(ii) Prior to the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the alleged father had no knowledge and had no reason to have knowledge of his alleged paternity of the child."
On appeal, Caycedo asserts the evidence below weighed heavily in his favor on each of the above two prongs. As it is dispositive, we first review the evidence with respect to the second prong of R.C.3111.13(F)(3)(a).
 {¶ 17} During her direct examination, Post testified that Caycedo had always been aware of her pregnancy. Post stated that the two discussed options when she became pregnant and that Caycedo repeatedly suggested that she should *Page 9 
have an abortion. Post also testified that she called Caycedo the day after their daughter was born. A woman answered the phone at Caycedo's apartment, and Post asked to speak with Caycedo. Post told him that he was the father of a baby girl and asked if Caycedo wanted to sign the birth certificate. Caycedo declined to sign the certificate and stated "Don't call here again." Post also testified that she sent a birth announcement to Caycedo's apartment in Ohio and never received the announcement back with a notice that it was undeliverable.
 {¶ 18} In support of her testimony, Post called two of her friends, Catherine Lasko and Brenda Sauers. Lasko testified that she was in the hospital room the day after Post gave birth and heard Post call Caycedo to inform him of the child's birth. Sauers testified that she was also present when Post called Caycedo. Sauers testified that Post dialed a number, asked for Caycedo, and then placed her hand over the phone's mouthpiece. With her hand over the mouthpiece, Post told Sauers that "she could not believe that a female just answered the phone." Sauers then heard Post tell Caycedo that he was the father of baby girl and heard Post ask Caycedo if he would "like to come to the hospital to sign the papers." On cross-examination, Sauers and Lasko both admitted that they could not hear the other end of the phone conversation.
 {¶ 19} In support of his case, Caycedo testified that Post's testimony was a complete fabrication. Caycedo asserted that he had never had sexual intercourse with Post. Caycedo also alleged that Post could not have called him at his Ohio *Page 10 
apartment following the birth of their daughter because Caycedo was no longer living in that apartment at that time. In support of this assertion, Caycedo introduced his lease for the apartment which ended prior to the birth of the child. In addition, Caycedo introduced evidence that he was undergoing training in Texas at the time the child was born.
 {¶ 20} Caycedo's evidence suffers from numerous flaws. First, the training log submitted by Caycedo shows that he trained on three different dates during the time period in question. The document submitted by Caycedo does not account for the remaining months during which Caycedo did not have specific training days. Moreover, the document does not contain any information about Caycedo's residency during his training period. Consequently, the document submitted by Caycedo did little to support his claim that he had moved from Ohio prior to the child's birth.
 {¶ 21} Upon review, the trial court had before it competent, credible evidence that Caycedo was aware of the child he fathered with Post. As stated above, mere disagreement over the credibility of witnesses is not sufficient to reverse a judgment as being against the manifest weight of the evidence. R.C. 3111.13(F), therefore, does not bar Post's claim for retroactive support.
General Argument {¶ 22} In his remaining argument, Caycedo argues generally that the trial court's judgment was against the manifest weight of the evidence. We disagree. *Page 11 
 {¶ 23} Initially, we note that genetic testing established that Caycedo is the father of Post's child. Testing indicated that there was a one in fifty-three million chance that Caycedo is not the child's father. On appeal, Caycedo has not challenged that determination.
 {¶ 24} In addition to the genetic testing, Post testified as follows. She met Caycedo at a bar in November of 1991. The two exchanged phone numbers and met several times over the next few months. The two began a sexual relationship shortly after they met. In January of 1992, the two flew together to Puerto Vallarta, Mexico. The two shared a hotel room during their stay. In support of her testimony, Post submitted the receipt from the hotel in Mexico that was made out to Caycedo. Shortly after returning from the trip, Post realized she was pregnant. She contacted Caycedo and the two discussed their options from February into May. Upon deciding to have the child, Post informed Caycedo of her decision. Post then gave birth to a baby girl on October 24, 1992. The following day, she called Caycedo to inform him that he was a father.
 {¶ 25} In contrast to Post's testimony, Caycedo testified as follows. He met Post in a bar in Cleveland in November of 1991. Post approached him after eavesdropping on his conversation and expressed an interest in getting free airline tickets to Mexico. Caycedo agreed to give Post a free ticket and the two ended up in Puerto Vallarta together. The two did not share a hotel room. As for their sexual encounter, Caycedo testified as follows: *Page 12 
 "Anyways, so I was in my room; I was getting ready and I remember she came by and she knocked on the door — she didn't even call-she just knocked on the door and she came in and that's when she performed oral sex on me."
Caycedo then went to dinner with friends, expecting that Post would join them. When Post did not show up, Caycedo called and learned that she felt ill. Caycedo then told his friends that he must have "sick sperm" and detailed to them what happened in his room. After the trip, Caycedo no longer had contact with Post.
 {¶ 26} We have little difficulty in agreeing with the trial court's assessment that Post was a more credible witness. In order to find Caycedo credible, this Court would have to find the following facts to be true. Post met Caycedo and decided almost instantly to have a child with him against his wishes. The two flew to Mexico together and Post obtained the receipt for Caycedo's room to later support a claim that the two had sexual intercourse. Post then performed oral sex on Caycedo and somehow impregnated herself with Caycedo's sperm. Upon delivering the child, Post called two friends into the hospital and then pretended to call Caycedo to inform him of the birth. Instead of these outlandish facts, we find Post's story credible. She had a relationship with Caycedo and mistakenly became pregnant. Caycedo did not want to have a child, so he stopped contacting Post and moved back to Texas.
 {¶ 27} To paraphrase the principle contained in Occam's Razor, all things being equal, the simplest explanation is usually the correct one. In this instance, Post's explanation is that simple explanation, while Caycedo's explanation strains *Page 13 
logic. This Court, therefore, finds that the trial court had before it competent, credible evidence to support its award of retroactive support.
 {¶ 28} Caycedo's third and fourth assignments of error lack merit.
 III. {¶ 29} Caycedo's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 14 
Costs taxed to Appellant.
CARR, P. J., MOORE, J., CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] For the purposes of our review, we assume without deciding that Post's delay was unreasonable.
[2] We recognize that this provision was held unconstitutional as applied in Smith v. Smith, 109 Ohio St.3d 285, 2006-Ohio-2419. We are not confronted with the factual scenario that was presented inSmith and therefore its holding has no bearing on our decision. *Page 1